SIMON FITCH

*v.*

J. OTIS WETHERBEE *et al.*

*Filed at Springfield January 19, 1884.*

1. RECEIVER—*what title passes to a receiver.* Where a land company, prior to the appointment of a receiver of its lands, had conveyed the same by deed of trust, to secure holders of its guaranteed and preferred stock, and the company's equity of redemption in the same lands had, before the filing of the bill in which the receiver was appointed, been sold on execution, and the time of redemption passed, it was *held,* that the receiver took nothing by the decree under which he was appointed, or by a conveyance from the company itself, and hence could pass no title by a sale made by him of such lands in pursuance of the directions of the decree.

2. JUDICIAL SALE—REDEMPTION—*purchaser at judicial sale—taking subject to right of redemption.* A purchaser at a judicial sale of land buys subject to the statutory right of redemption by the defendant, his heirs, administrators or assigns, or any person interested in the property through or under the defendant, within twelve months, and by any decree or judgment creditor, his executors, administrators or assigns, after twelve and within fifteen months.

3. SAME—*effect of a decree, as depriving a person of the statutory right of redemption.* The right given by statute to a decree or judgment creditor to redeem, is not affected by a failure of the court to provide in its decree for the sale of real estate, for the privilege of redemption. That right is given by the statute, and not by the decree of the court. In a case where the statute authorizes a redemption from the sale, a clause in a decree declaring that the sale shall be made absolute, will not bar that right. That part of the decree will be regarded as inoperative, and a redemption allowed as in other cases. And it makes no difference whether the sale is made by an officer of the law, or by one appointed by the court to perform that duty.

4. SAME—*purchaser of equity of redemption at execution sale—necessity of redeeming from the superior lien.* A sale and sheriff's deed under a judgment which is a junior lien on the land of the debtor to that of a deed of trust, pass only the debtor's interest therein,—the equity of redemption; and such purchaser taking no rights superior to those of his debtor, must redeem from a subsequent sale made under a decree of foreclosure of the trust deed, within twelve months from the date of that sale, or he will, under the statute, be barred, and his title as the holder of the equity of redemption will be defeated.

5. After the execution and recording of deeds of trust by a debtor to secure payment of certain obligations, a judgment was recovered against him, upon which an execution was issued and levied upon the same lands embraced in the trust deeds, and a sale of them made to the plaintiff in the judgment. On bill filed by the person secured by the trust deed, to foreclose, in which the judgment creditor was made a party, a decree was rendered finding that his equities in the premises were subordinate to the equities and rights of the complainants, and ordering the trustee to sell the lands. A sale was made under the decree, and no redemption having been made from the sheriff's sale, a deed was made to the assignee of the certificate of purchase, the date of the assignment thereof not appearing, no redemption having been made from the trustee's sale under the decree: *Held,* that the grantee in the sheriff's deed had no title to convey, it being cut off and defeated by his failure to redeem from the trustee's sale.

6. SAME—*redemption by judgment creditor—when the right exists.* Where, before a foreclosure sale, the equity of redemption of the mortgagor has been sold on execution against him, and the period of redemption by him passed, so that he has no interest remaining, a creditor having a judgment or decree against him may redeem from the foreclosure sale.

7. After sale on execution in favor of a bank, of the debtor's equity of redemption in land, a bill was filed by other creditors to enforce and foreclose two deeds of trust on the same real estate, which were prior liens, making the purchaser under the execution, but not the assignee of the certificate of purchase, a party, in which a decree was rendered holding the trust deeds the prior lien, and ordering a sale. The sale was made, and the assignee failing to redeem from the same, a judgment creditor redeemed from the sale under the decree: *Held,* that the failure to make the assignee a party to the bill could not affect the right of the judgment creditor to make his redemption from the sale under the decree, if any was allowable in such case.

8. SAME—*who is a judgment creditor that may redeem.* The decree or judgment creditor having the right to redeem, under the statute, from a judicial sale, is a decree or judgment creditor of the mortgagor or judgment debtor whose property has been sold and is the subject of contention among his creditors. The statute does not embrace a judgment creditor of every person who may have been made a defendant to a foreclosure, as having some interest in the mortgaged premises.

9. SAME—*who may object to a redemption by a judgment creditor.* After the right of the holder of the equity of redemption in land is cut off by a foreclosure sale, he can not be heard to dispute the right of another judgment creditor to redeem from the foreclosure sale, as he has no interest to be affected. The only person who can object, if any one can, to a redemption by a junior decree or judgment creditor, is the purchaser at the sale redeemed from, or his assignee.

10. SAME—*redemption from sales under trust deeds prior to the recent statute—effect of sale under decree of foreclosure.* Under a deed of trust containing a power of sale given before the recent law on the subject took effect, a sale made by a trustee appointed by the court to execute the trust, is not subject to redemption, either by the mortgagor or a judgment creditor.

11. But where the party secured files a bill to foreclose the same, and a decree is entered having all the elements and features of a common decree of foreclosure, as, when it finds the rights of the parties, and specifically directs the party who is to make the sale as to the notice to be given, the manner of the sale, and how to distribute the proceeds of the sale, and requires him to report his acts to the court for its approval, relieving the trustees from acting, except the one so appointed to carry the decree into execution, a sale made under such circumstances will not be regarded as made under the power in the deed, but as under a decree for the payment of money, and the right to redeem from such sale will exist the same as in the case of the foreclosure of an ordinary mortgage having no power of sale, and in such case it is not material that the person appointed to sell is named trustee or "active trustee."

12. MORTGAGES—*what amounts to a mortgage.* Any conveyance of an estate to secure a debt or the performance of some act, such as the payment of money or the furnishing of indemnity, subject to be defeated by the performance of the act agreed to be done, is a mortgage.

13. Deeds of trust by a corporation upon its lands, to trustees, to secure the performance of an undertaking of the company to pay dividends, or interest, on guaranteed and preferred stock issued and sold, and ultimately to pay for the stock itself, are in the strictest sense mortgages.

APPEAL from the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

Messrs. H. S. & F. S. OSBORNE, for the appellant:

The title under the redemption, if good, relates back to the title under the foreclosure sale, and takes priority over the sheriff's deed under the Everett National Bank sale. *McRoberts* v. *Conover*, 71 Ill. 524; *McLagan* v. *Brown*, 11 id. 519; *Moore* v. *Hopkins*, 93 id. 505; *Lamb* v. *Richards*, 43 id. 312; *Sweezy* v. *Chandler*, 11 id. 445; *Karnes* v. *Lloyd*, 52 id. 113; *Lloyd* v. *Karnes*, 45 id. 61.

The trust deeds were mortgages, within the meaning of the statute concerning redemption. As to what is a mortgage,

see 1 Washburn on Real Prop. chap. 16, sec. 1; 2 Story's Eq. Jur. sec. 1018.

Assuming the trust deeds were mortgages, then the decree was essentially a decree of foreclosure, and the sale was made by virtue of the decree,—not under the power contained in the deeds. What constitutes a foreclosure is laid down in 2 Jones on Mortgages, sec. 1538, and 2 Hilliard on Mortgages, sec. 1.

The right of redemption is given by statute, and can not be taken away by a decree of court. (*De Wolf* v. *Haydn*, 24 Ill. 530.) The decree will be construed and given effect in harmony with this right. *Chesnut* v. *Marsh*, 12 Ill. 177; *Shriver's Lessee* v. *Lynn*, 2 How. 43; *Bigelow* v. *Forest*, 9 Wall. 339. The law relating to redemption gives to the mortgagor and to the judgment creditor an equitable estate in the premises. *Bronson* v. *Kinzie*, 1 How. 311; *Brine* v. *Hartford Ins. Co.* 96 U. S. 638.

Mr. GEORGE W. SMITH, for the appellees:

The bill was essentially a bill to enforce the execution of a trust,—not for the foreclosure of a mortgage. *Coal and Mining Co.* v. *Edwards*, 103 Ill. 472.

Nor was the decree a decree of foreclosure. It directed, first, a sale by the "active trustee," or in effect commanded that the trust be executed; and second, that a receiver be appointed, and that he sell the property of the corporation.

Neither the sale by the "active trustee," nor by the receiver, was a sale by virtue of a decree of "foreclosure of mortgage, or enforcement of mechanic's lien or vendor's lien, or for the payment of money," nor did either sale come within the statute concerning redemption. *Rice* v. *Brown*, 77 Ill. 549; *Wilkins* v. *Gordon*, 11 Leigh, (Va.) 547; *Crenshaw* v. *Siegfried*, 24 Gratt. (Va.) 272; *Swift* v. *Smith*, 102 U. S. 450; Rev. Stat. title "Judgments," sec. 16; Rev. Stat. title "Corporations," sec. 25.

Rejecting that part of the decree which declared that the sale should be absolute, it was still a decree, not of foreclosure, but to close a trust.

The case made is not within the principle of *Suitterlin* v. *Connecticut Mutual Life Ins. Co.* 90 Ill. 483.

In any event, the redemption and sale thereunder were incomplete. The deposit was insufficient. It should have been $1201, and interest at ten per cent, making $1351.12, instead of $1210,—or at least $1100 and $137.50, making $1237.50.

The act of 1879, fixing eight per cent as the rate to be paid, was not available for the redemption in question. The right of redemption, as it exists at the time, enters into the contract and binds the parties. The right to redeem involves the coördinate right to require what the law prescribes. *Bronson* v. *Kinzie*, 1 How. 311; *Van Hoffman* v. *Quincy*, 4 Wall. 535; *Gunn* v. *Barry*, 15 id. 610; *Brine* v. *Hartford Ins. Co.* 96 U. S. 627.

Messrs. DEXTER, HERRICK & ALLEN, solicitors for the Chicago, Burlington and Quincy Railroad Company:

We concede that to entitle a judgment creditor to redeem, it is not necessary that he should have a lien. The following authorities establish that rule: *McRoberts* v. *Conover*, 71 Ill. 529; *McLagan* v. *Brown*, 11 id. 519; *Moore* v. *Hopkins*, 93 id. 505; *Lamb* v. *Richards*, 42 id. 312; *Sweezy* v. *Chandler*, 11 id. 445; *Karnes* v. *Lloyd*, 52 id. 113; *Lloyd* v. *Karnes*, 45 id. 61.

But here, the question is not whether a judgment creditor, who would otherwise be entitled to redeem, must have a lien, but, whose judgment creditors have such right of redemption. It is clear that the judgment creditors of every person will not have the right of redemption. There must be some limitation as to the particular judgment creditors who are entitled to redeem. The provision of the statute is: "If such

redemption" (the redemption provided for in the preceding sections) "is not made, any decree or judgment creditor, etc., may, after the expiration of twelve months, and within fifteen months, after the sale, redeem the premises," etc. Whose judgment creditors are meant by this section? Not the judgment creditors of all the world, but clearly only the judgment creditors of those who had a right to redeem, under the preceding sections, and whose right of redemption the law provides shall attach in favor of their judgment creditors, at the expiration of the twelve months.

We contend that the true construction of section 18 is, that only those persons who have, at the time of the sale, some interest in the property sold, can have any right to redeem from the sale. A right to redeem implies some interest to be redeemed, and it would be an anomaly in law to vest a right of redemption in a party having nothing to redeem.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This was a petition brought by J. Otis Wetherbee and Franklin E. Gregory, under what is known as the "Burnt Records act," to have established and confirmed in them the title to a tract of land described in the petition. The only person named as defendant who makes any defence, is Simon Fitch. On the hearing the Superior Court found petitioners were vested with the title to the property, and so decreed. Defendant brings the case to this court, on appeal.

Both parties claim the title to the premises that was originally in the Cook County Land Company. Concerning the principal facts there is no disagreement, and they may be shortly stated. On the 9th day of March, 1875, the Cook County Land Company, by its deed of that date, conveyed the premises in question, with other property, to Robert C. Wright, J. Irving Pearce, and William C. Tibbetts, in trust,

for the purposes therein named.   It was recited in the deed
the company was about to issue shares of stock, amounting
to $150,000, the certificates of which should bear a guaranty
to the effect such shares would receive a dividend of eight
per cent, to be paid semi-annually, and that the property was
conveyed in trust to secure the performance of the agreement
of the company in that behalf.   It was further provided the
trustees therein named might, at any time, on the application
of the holders of the stock, or at their own discretion, upon
notice given, sell and convey any part of the lands described
in the deed, in the performance of the trust.   One of the
trustees named in this deed refused to act, and the trusts
devolved on the other two.

Afterwards, on the 13th day of May, 1876, the company,
by its deed of that date, conveyed the property in controversy
that was embraced in its former deed, except a strip of one
hundred feet in width, together with other property, to the
same trustees that had assumed the burden of the trusts
created by its former deed, and one Charles A. Gregory.
This latter conveyance, like the former one, was in trust, the
purposes being definitely declared in the deed itself.   It con-
tained a recital the land company was about to sell preferred
stock to a very large amount, the certificates of which should
be indorsed the company would pay the holder a certain sum,
semi-annually, in full of all dividends or interest on such
shares, and that such stock should be what was denominated
"preferred stock."   Among other conditions written in the
deed, was one the trustees might sell, convey or incumber
any of the property for any purpose not inconsistent with
the trust, and it was provided one of the trustees, to be styled
"active trustee," might be designated by them to act for all,
and that Charles A. Gregory should be the "active trustee"
in the first instance, and that conveyances and releases of
land made by him should be as effective and valid as if made
by all such trustees.   This deed did not provide for notice in

31—110 ILL.

case of sales under its provisions. Both of these deeds were recorded in the county where the land is situated, soon after the date of their execution.

Subsequently to the recording of these trust deeds, the Everett National Bank of Boston recovered a judgment against the Cook County Land Company, the grantor in the deeds of trust, in quite a large sum. The date of the judgment is May 9, 1877. Upon an execution issued on this judgment, the property in question was levied upon and sold, and was bid in by the bank, to which the usual certificate of purchase was issued. After this sale, and before the time for redemption had expired, two bills were filed in the Superior Court by the holders of the preferred and guaranteed stock of the land company, to enforce and make effective the security afforded by the trust deeds. The defendants to these bills were the land company, all the trustees named in both deeds, and the Everett National Bank. Both bills are similar in form and in substance,—one having reference to the trust deed of March, 1875, and the other to the deed of May, 1876. The prayer of the latter bill is, that a receiver be appointed, according to the practice of the court, to take charge of the property described in the trust deeds; that the trustees therein named be removed, and some proper person appointed in their place; that complainants, according to the amount of their respective claims, may be decreed holders of such certificates of stock, and creditors of the Cook County Land Company, and entitled to payment; that the deeds of trust may be declared security for the payment of complainants' claims, as against the Cook County Land Company, the common stockholders, and all of the creditors of the land company whose liens have been acquired at a date subsequent to the day of the recording of the deeds of trust; that the Cook County Land Company, and judgment creditors, if any, may be decreed to pay to complainants the amount of their respective claims, on a day to be appointed by the court,

and in default thereof the lands and premises described in the deed of trust may be sold under the direction and according to the practice of the court, and that the proceeds of such sales be applied to the payment of complainants' claims, and that the land company be restrained from disposing of any of the property except under the directions of the court. The cases were consolidated, by consent, with the leave of the court, and a decree was thereafter rendered in the consolidated cause. On the hearing, the court found the principal facts as they are alleged in the bills, and found specifically, among other things, the rights of the Everett National Bank were subordinate to those of the holders of preferred and guaranteed stock secured by the trust deeds,—the deeds having been made and recorded prior to the recovery of the judgment,—and also found the amount of the outstanding guaranteed and preferred stock, and the respective holders of the same, and that a sale under the first trust deed is unnecessary, and thereupon decreed that Wright's declination as trustee under the first deed be accepted; that Pearce and Tibbetts be excused and relieved from acting as trustees, and that all their rights, duties and powers shall be devolved upon and be vested in Charles A. Gregory, as active trustee, (so called,) and that said trusts be forthwith "closed and determined." The court further decreed that no sale be made under the trust deed of March, 1875, but that Charles A. Gregory, as active trustee, do at once, and within ten days from the entry of the decree, proceed to sell the property, and made provision as to giving notice of the time and place of sale, as is usually done in cases of foreclosure. The court further decreed the sale to be made by Gregory should be absolute; that he execute and deliver to the purchasers deeds for the property sold, and then pay the proceeds arising from such sales, first, to the guaranteed stockholders, as their rights were found by the court, in its decree, to be under the first deed of trust, and then distribute the remainder of such

proceeds, after paying certain costs and expenses, between the holders of the preferred shares, or their solicitors, as in the schedule in the decree mentioned, ratably, according to the amounts held by each; and if the sum realized from the sale of the property should be more than sufficient to pay the par value of the preferred shares, the same should be paid to the receiver. The court appointed Franklin H. Watriss receiver, and directed him to make a sale of the property, in the same manner as Gregory was directed to do. Pursuant to that decree, the property in question, with other property of the land company, was sold on the 13th day of December, 1879, both by Gregory and the receiver, and the same was purchased by Bullens and Wetherbee, who received deeds for the same, in accordance with the directions given in the decree. By *mesne* conveyances, whatever title the purchasers at those sales acquired by their purchase came to and was vested in petitioners. Pending these proceedings in the Superior Court, the sheriff's certificate of sale to the Everett National Bank having been assigned to Franklin E. Gregory, a deed upon it was executed by the sheriff and delivered to him. The record does not show when the certificate of purchase was in fact assigned by the bank to Gregory. It simply appears it was assigned to him, and that fact only appears from the recitals in the sheriff's deed. Whatever title to the property Gregory obtained through the sheriff's deed to him, by *mesne* conveyances also came to petitioners. It is the title thus acquired from these two sources petitioners insist is paramount, and should prevail.

On the 6th day of October, 1880, defendant, Fitch, obtained a money decree in the United States Circuit Court, against the Cook County Land Company, on which an execution issued, as upon a judgment at law. The first execution issued on the decree seems to have been returned unsatisfied. An *alias* execution issued on the 10th day of March, 1881, and was levied on the land in controversy by the mar-

shal having the execution.   On the same day Fitch deposited
with the marshal a sum thought to be sufficient to redeem
the property from the sale made by Gregory under the decree
of the Superior Court, and the marshal issued the usual cer-
tificate of redemption as in cases of redemption by a judg-
ment creditor under the statute.   A misdescription of the
premises seems to have been made by the marshal in enter-
ing the levy upon the execution, or otherwise, but the error
was afterwards corrected by leave of the court out of which
the execution issued.   Under the redemption and levy the
property was sold to Fitch at the marshal's sale, and not
having been redeemed by any one having authority to make
a redemption, a deed was made to him, under the direction
and by the order of the court.   It is the title to the property
so acquired that Fitch insists is the better title, and under
which he claims the property in fee.

Before entering upon the discussion of what is thought to be
the material question arising on the record, it may be proper
to dispose of some matters of less importance, and that do
not seriously affect the merits of the case.   It will be noticed
the Superior Court, by its decree, directed the receiver it had
appointed, to sell the property in like manner as Gregory was
directed to sell it.   That, it is apprehended, did not in any
manner strengthen the title petitioners ask to have estab-
lished in them.   There was no title in the receiver that he
could sell.   The land company had, long before the appoint-
ment of the receiver, conveyed the premises to trustees, to
secure the holders of guaranteed and preferred stock, and the
equity of redemption that remained in the land company had
been previously sold on execution under the Everett National
Bank judgment, and the time for redemption from that sale
had expired by limitation, so that the receiver took nothing
by the conveyance to him from the land company under the
order of the court, or under the decree itself, that he could
sell.   The sale made by the receiver was a useless proceeding.

Nor is it perceived how the title petitioners claim is at all aided by purchasing the title Franklin E. Gregory is supposed to have acquired under the execution in favor of the Everett National Bank. The bank was made a defendant to the bills in the Superior Court filed by the holders of the preferred and guaranteed stock, and which was secured by the trust deeds. It answered setting up its rights in the property acquired under the execution sale, but it was decreed its equities in the premises were subordinate to those of complainants. It did not appear from anything in the record, or otherwise, that Gregory was the assignee of the certificate of purchase issued to the bank at any time before the filing of either bill on which the decree of sale was rendered. Unless that fact did appear in some way, it could not be said that he was a necessary party to that proceeding. It is sufficient the bank—the judgment creditor—was made defendant. It follows, therefore, the title of Gregory under the sheriff's deed was defeated and cut off by his failure to redeem from the sale made by Charles A. Gregory under the decree of the court, within twelve months from the date of such sale. All he acquired was the equity of redemption that was in the land company, and his right to redeem would be and was barred by the statute, in the same manner and within the same period as would be the right of the land company itself. *McRoberts* v. *Conover*, 71 Ill. 524, is conclusive of this view of the case.

But if the assignee of the bank was a necessary party, as the holder of its certificate of purchase, it is not perceived how that fact would affect the questions discussed in this opinion. The utmost that could be said would be that his right of redemption, if any existed, from the sale under the decree, was not barred or cut off by a proceeding to which he was not a party. But certainly the error in that respect, if it was an error, could not affect the right of any judgment or decree creditor to redeem from the sale under the decree of the court, if it were a sale where a redemption is permitted by law.

Another question has been very elaborately discussed. It is, can the judgment creditor of a mortgagor who has conveyed his equity of redemption before the foreclosure sale, and has therefore no interest in the title foreclosed, redeem from such sale? This exact question does not arise on the record being considered, but one having a close affinity to it may be said to be involved. Here, the land company was the mortgagor of the lands in litigation. That company never conveyed its equity of redemption to any one. It is true its equity of redemption was sold on an execution issued on a judgment in favor of the Everett bank and against the land company, which judgment was a subsequent lien to the trust deeds; but the time for redemption which the defendant had under the statute had not expired when the bill which is alleged to be a bill to foreclose the trust deeds, was filed in this case. Before any sale of the property embraced in the trust deeds was made, the time for redemption from the sale under the Everett bank judgment had, however, expired, and the purchaser, or the assignee of the purchaser, had obtained a sheriff's deed to the property. The question, then, that arises, is, can a decree or judgment creditor of the land company redeem from the foreclosure sale, if, in fact, it was a foreclosure sale.

It may be well to inquire what interest, if any, the holder of the equity of redemption had in the property that would give him any standing in court that would enable him to object to a redemption by a junior decree or judgment creditor of the land company. Obviously, none at all. His rights, whatever they might be, would have been cut off by the sale under the trust deeds or the decree of the court, whichever it was, after the expiration of twelve months from the date of sale. At most, the purchaser at the sale under the Everett bank judgment acquired nothing but the equity of redemption that was in the land company. The right of the land company would have been cut off in twelve months,

and the rights of the holder of its equity of redemption would be barred in the same time. It follows that before the decree or judgment creditor undertook to redeem the property from the foreclosure sale, the holder of the equity of redemption had no interest whatever in the property. His rights had been barred or cut off by the foreclosure sale, and he can not be heard to complain of that which could by no possibility affect him. It seems clear the only person that could object, if any one could, to a redemption by a junior decree or judgment creditor in this case, would be the purchaser at the foreclosure sale, or his assignee. The right of such parties to object to the redemption made will now be briefly considered. So far as the point now being considered is concerned, it will be assumed the sale from which the redemption was attempted was a foreclosure sale. Whether it was such a sale will be considered further on.

A purchaser at a judicial sale buys the property subject to the statutory right of redemption. It is provided in the statute two classes of persons may redeem real property sold at a judicial sale,—first, any defendant, his heirs, administrators or assigns, or any person interested in the property through or under the defendant, may, within twelve months from the date of the sale, redeem real property sold on execution or decree of court; and second, "any decree or judgment creditor," his executors, administrators or assigns, after twelve months, and before the expiration of fifteen months, may redeem real property sold on execution or decretal order. In this case, no one belonging to the first class having redeemed the property sold, one of the second class is attempting to redeem under the provisions of the statute. The question that arises is, who is meant by "any decree or judgment creditor" that may redeem?—who is he creditor of? Primarily, it must be "any decree or judgment creditor" of the mortgagor or the judgment debtor whose property is the subject of contention among his creditors. In a case like the

one being considered, it includes any decree or judgment creditor of the mortgagor. It is certainly not meant to include a judgment creditor of any person who may have been made a defendant to a foreclosure proceeding, as having some interest in the mortgaged premises. The statute is not that broad. Whether a judgment creditor of an assignee or purchaser of the equity of redemption is one of the class of persons that may redeem when the original debtor, or any one interested in the property through or under him, fails to redeem within twelve months, is a question that need not now be considered, as it can not arise in this case. Whoever else may redeem in such cases, it hardly admits of a doubt the judgment creditor of the mortgagor is one of the persons that may redeem under the provisions of the statute.

Plainly, then, any decree or judgment creditor of the mortgagor may redeem from the mortgage sale, where no one having a right to redeem the property within twelve months from the date of the sale elects to exercise that privilege. And it makes no difference whether the mortgagor had conveyed his equity of redemption, or whether it had been sold on execution, before the foreclosure sale. The previous decisions of this court accord with this construction of the statute. In *McRoberts* v. *Conover*, 71 Ill. 525, this precise question was involved and was decided. Before the foreclosure sale the equity of redemption of the mortgagor had been sold on an execution against him, and yet a judgment creditor of the mortgagor was permitted to redeem the property from the mortgage sale after the failure of the mortgagor, or the purchaser of his equity of redemption, to redeem within twelve months from the date of the sale. It was ruled, in that case, where a party purchases real estate at sheriff's sale, under execution, upon which there was a mortgage, executed by the judgment debtor prior to the judgment upon which the execution was issued, and obtains a deed from the sheriff upon such sale, all he acquires by virtue of

such deed is the equity of redemption of the judgment debtor or mortgagor, and that he must exercise his right to redeem, thus acquired, within twelve months from the date of the mortgage sale, and if he fails to do so, a judgment creditor of the mortgagor may rightfully redeem at any time after the expiration of twelve months, and before fifteen months, from the date of the sale, and subject the land to sale under execution upon his judgment. The case of *Moore* v. *Hopkins*, 93 Ill. 505, declares the same doctrine. It was there held, that where the assignee of the equity of redemption, who stood in the shoes of the judgment debtor, with the same rights, but no others, to redeem the property from the execution sale, failed to make any redemption within twelve months from the date of the sale, he would be forever barred that privilege; and any judgment creditor of the former owner of the property sold, by electing to do so within three months after the expiration of twelve months, could redeem the property from the former execution sale, on the conditions and terms provided in the statute. These cases would seem to be conclusive of the same point in the case being considered.

This construction can work no hardship to any one. As has been seen, the interests of the holder of the equity of redemption, whether it was acquired by voluntary conveyance or at execution sale, are barred and forever cut off by the decree before any decree or judgment creditor can make any redemption of the property, and of course he has no just ground of complaint. So far as he is concerned, it is an abandonment of his purchase of the equity of redemption, leaving the property to the creditors of the mortgagor or former owner, and the policy of the law is to make the property of the failing debtor pay as much as possible of his indebtedness. As respects the purchaser at the foreclosure sale, he stands in no position to object to a redemption of the property on grounds of hardship, or for any other reason. In making his bid, the law charges him with notice the prop-

erty is subject to redemption by one of the two classes of persons mentioned in the statute as having that right. In this case the purchaser is chargeable with notice that, under the law, the land sold to him was subject to redemption after twelve months, and before the expiration of fifteen months, from the date of the sale, by any decree or judgment creditor of the mortgagor; and where a party having a right to do so, under the statute, elects to exercise his privilege to redeem the property from the prior sale, the purchaser will not be heard to object. But aside from all questions of hardship or the policy of the law, the legislature has plainly declared that any "decree or judgment creditor" of the mortgagor may redeem the premises from the foreclosure sale after twelve months, and before the expiration of fifteen months, from the date of the sale, and this court has neither the right nor inclination, by judicial construction, to abridge that statutory privilege.

Coming now to the consideration of what is regarded as the most material question in the case, it is whether the sale made by Gregory, under the decree of the Superior Court, was one from which a decree or judgment creditor might redeem the property sold, under the provisions of the statute that provides for redemption in certain cases. Conceding it is such a sale, the redemption made by defendant, Fitch, on his execution against the decree debtor, was valid, and his would be the better title; but if it were not such a sale, then petitioner's title was in nowise affected by the attempted redemption. A brief reference to the statute in respect to judicial sales from which a redemption is allowed by the debtor, or by a decree or judgment creditor, may be of service in the further consideration of the case. Section 16, chapter 77, of the Revised Statutes of 1874, provides that "where any real estate is sold by virtue of an execution, judgment, or decree of foreclosure of mortgage, or enforcement of mechanic's lien or vendor's lien, or for the payment of money,"

it shall be the duty of the officer making the sale, instead of executing a deed for the premises sold, to give the purchaser a certificate describing the premises, showing the amount bid therefor, and when the purchaser will be entitled to a deed, unless the premises shall be redeemed. Another section of the same act requires the certificate shall be recorded in the office of the recorder in the county where the land sold is situated. Section 18 provides the defendant, his heirs, administrators or assigns, or any person interested in the premises through or under the defendant, may, within twelve months from the date of the sale, redeem the real estate sold, and prescribes the terms on which such redemption may be made; and by section 20 it is declared, if such redemption is not made, then "any decree or judgment creditor, his executors, administrators or assigns, may, after the expiration of twelve months, and within fifteen months, after the sale, redeem the premises," in the manner in that section provided. The right of redemption given by the statute to a decree or judgment creditor is not affected by a failure of the court to provide in its decree for the sale of real estate, with the privilege of redemption. It is the statute that gives the right of redemption, and not the decree of the court. In a case where the statute authorizes a redemption from a sale, a clause in the decree ordering the sale that declares the sale shall be absolute, will not bar that right. That portion of the decree will be regarded as inoperative, and a redemption will be allowed as in other cases. Nor does it make any difference whether the sale was conducted by an officer of the law or by one appointed by the court to perform that special duty.

Another inquiry that will aid in the further investigation is, whether the deeds of March, 1875, and May, 1876, and mentioned in the bills in the consolidated cause, are mortgages, or deeds of trust in the nature of mortgages, as those terms are used in the law. Without seeking for any general definition of a mortgage, it is sufficient for the present dis-

cussion to say that a mortgage is any conveyance of an estate to secure a debt, or the performance of some act, such as, the payment of money, or the furnishing of indemnity, subject to be defeated by the performance of the act agreed to be done. The deeds of March, 1875, and May, 1876, are in the nature of mortgages, and come within this definition. It certainly appears they were given to secure the performance of the undertaking of the land company to pay the dividends or interest semi-annually on the guaranteed and preferred stock, and ultimately to pay for the stock itself. In the strictest sense that was to secure the payment of money, and makes both deeds mortgages.

It will be observed both deeds contain what is called a "power of sale" in the trustees therein named, and the contention on this branch of the case is, the sale was made by the trustee appointed by the court, under a power contained in the deeds, and not under the decree of the court for a foreclosure of the trust deeds, or, what would be the same thing, a decree for the payment of money. Undoubtedly, where the sale is made under a power it would be absolute, but if made under a decree of foreclosure, or for the payment of money, by an officer of the law, or by a person appointed by the court to perform that special duty, then the right of redemption would exist under the statute in favor of any one to whom the privilege is secured. The rule on this subject may be readily ascertained, but the difficulty lies in determining when it is applicable to a particular case. Admitting, as is freely done, the case being considered is not without difficulty in this respect, it may be said the sale made by Gregory has more features like a sale under a decree of court than under a power. If the decree is not a foreclosure or for the payment of money, it would be quite difficult to define it, or to ascertain for what purpose complainants come into court. No complaint was made the trustees excused or relieved from acting were incapacitated, or had refused to

perform the trusts created by the deeds, or were unwilling to act with the trustee appointed by the decree. The prayer of the bills indicates the relief sought was for a decree in the nature of a foreclosure, for the payment of money. It will be seen complainants, by their bills, asked for a decree that the deeds of trust be declared security for the payment of their claims as against the land company, the common stockholders, and all judgment creditors of the land company whose liens had been acquired at a date subsequent to the day of the recording of the trust deeds; that the land company and such judgment creditors, if any, be decreed to pay complainants the amount of their claims on a day to be appointed by the court, and in default thereof that the lands and premises embraced in the trust deeds may be sold under the direction and according to the practice of the court, and the proceeds applied to the payment of the claims of complainants against the land company. This, it will be noticed, is the usual formula of a bill in chancery to foreclose a mortgage, or trust deed in the nature of a mortgage. It is true complainants asked to have the trustees removed, and some suitable person appointed in their place, but that was not done with a view to have such new trustee execute the power in the trust deeds, or either of them. The same thing was done in *Swift* v. *Smith*, 102 U. S. 442, and yet it was held the sale was under the decree of the court, and not under a power, and hence a redemption was allowable. The fact complainants asked, by their bills, to have a receiver appointed, is well nigh conclusive evidence it was not intended the trustees, as such, should have any further control over the trust property, or the proceeds arising from the sale thereof. It is obvious it was the purpose of the proceeding the property should be sold under the "direction and according to. the practice of the court," by an officer of the court, or by a person appointed by the court to perform that special duty, and who should be under its control, and to

which he should report his acts and doings in the premises. The decree rendered in the consolidated cause is nearly or quite as broad as the prayer of the respective bills. It will be observed the court ascertained the number of preferred shares outstanding, the par value of the same, and the persons holding or owning the same and who were entitled to share in the fund to retire them, and also found other facts material to the principal relief sought. The court then decreed that the declination of Wright, who was named as one of the trustees in the first trust deed, be accepted; that Pearce and Tibbetts be relieved and excused from further acting as trustees under the trust deeds, and their rights, duties and powers be devolved upon and vested in Charles A. Gregory, as active trustee, so-called, and that "said trusts be forthwith closed and determined." It was then further decreed, that Gregory, within ten days from the entry of the decree, proceed to sell or dispose of all the property mentioned in the trust deeds, (the real estate described in the first trust deed being also embraced in the second deed,) for cash in hand, prescribing with minuteness what notice should be given, and finally directs what disposition shall be made of the proceeds of such sales. Nothing is left to the discretion of the party making the sale. He was imperatively commanded to make distribution of the proceeds of the sales in accordance with the decree, and when that was done it should be deemed a full and complete execution of the trusts declared in each trust deed. The duties devolved upon Gregory were precisely the same as the master in chancery would perform had he been directed by the court to make the sale. He was under the control of the court, as the master would be. It is a matter of no consequence what Gregory was called in the decree,—whether "trustee," or "active trustee," or "special master." It is plain he was a person appointed by the court, under its general chancery powers, to execute its decree instead of its master, and by what name he was called did not

and could not change the capacity in which he acted. It would be singular, indeed, if the court, in a case to foreclose a trust deed in the nature of a mortgage, and made prior to the recent statute on that subject, could, by appointing one of the trustees named therein to execute its decree, in that way cut off the statutory right the defendant, or any decree or judgment creditor, would have to redeem from the sale. Such is not the law.

There is another consideration entitled to great weight in reaching a conclusion on this question. It will be recollected the court directed that no sale be made under the first trust deed. The reason assigned for that is, the real estate described in the first trust deed is also embraced in the second deed, and therefore the rights of complainants in the consolidated cause could be fully protected by a sale of the property mentioned in the second deed. It is not perceived how that could be true, unless there was a foreclosure of the second trust deed, under the general chancery powers of the court. It seems obvious that was done, as the party making the sale was directed, out of the proceeds of the sales, to pay, first, the *cestuis que trust* under the first trust deed, and the sequel shows he did so apply the proceeds of the sales made by him. Whence did Gregory derive that power? It must have been from the decree of the court, for certainly the trustees under the second deed of trust possessed no such powers. There are many other features of the case that show the sale must have been under the decree, and not under the power contained in either deed. But enough has been suggested to support the conclusion reached, that the sale was under a decree of the Superior Court, in the nature of a foreclosure, for the payment of money, and hence the statutory right of redemption existed in favor of defendant, Fitch, of which he might avail. So far as the cases are analogous, the reasoning in *Swift* v. *Smith, supra,* is in harmony with the views here expressed.

The facts in *Rice* v. *Brown*, 77 Ill. 549, are entirely different from the facts in the case being considered, and it is therefore no authority against the conclusion reached in this case.    In that case the mortgagee or grantee in the trust deeds in whom was the power of sale, having died, his administrator filed a bill in the circuit court to have another trustee substituted to execute the trusts of the several trust deeds, and the court made a decree finding the amount of the indebtedness, and appointed a trustee to execute the power contained in the deeds of trust.    In accordance with the appointment the new trustee sold the premises, and the same were bought in by the administrator, for the heirs of the deceased *cestui que trust.*    That was held, and rightfully so, to have been a sale under the power, and not under the decree of the court.    So far as it appears from the report of the case, the court was not asked to find the amount of the indebtedness due at that time, and there was no necessity for so doing.    All it was asked to do was to substitute a new trustee to execute the power contained in the trust deeds, and that it did do.    Thereafter the court retained no control whatever over the trustee or the trust fund.    Here, the party appointed to make the sale was directed to make distribution of the proceeds of the sales in accordance with the decree, and was required to report his acts and doings to the court appointing him, and, as has been seen, he was invested by the decree with new and additional powers, which he did not have under the trust deeds.    The cases are wholly unlike.

The decree of the Superior Court will be reversed, and the cause remanded for further proceedings conforming to this opinion.

*Decree reversed.*