BISON STATE BANK v. BILLINGTON et al.

(Circuit Court of Appeals, Fifth Circuit. December 3, 1915.)

No. 2774.

1. LIMITATION OF ACTIONS ⬤➾127—TIME OF COMMENCEMENT OF ACTION—AMENDMENT OF PLEADING.

An amendment of a petition, permitted by a federal court for the sole purpose of alleging necessary jurisdictional facts, and which does not introduce any new cause of action, relates back to the time the suit was commenced, for the purposes of the statute of limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 543–547; Dec. Dig. ⬤➾127.]

---

⬤➾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. BILLS AND NOTES ☞345—BONA FIDE PURCHASER—NOTICE OF DEFECTS.

That notes made in one state are offered for sale in another is not a badge of fraud which puts a purchaser for value before maturity on inquiry as to any infirmity not appearing on their face, and only actual notice or bad faith can impeach his title.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 849–852; Dec. Dig. ☞345.]

In Error to the District Court of the United States for the Northern District of Texas; Edward R. Meek, Judge.

Action at law by the Bison State Bank against B. J. Billington, E. B. Williams, and J. A. Dunn. Judgment for defendants, and plaintiff brings error. Reversed.

Jamison, Hutchison & Ostergard, of Kansas City, Mo., Kirby & Davidson, of Abilene, Tex., and Theodore Mack, of Ft. Worth, Tex., for plaintiff in error.

John M. Wagstaff, of Abilene, Tex., for defendants in error.

Before PARDEE and WALKER, Circuit Judges, and SPEER, District Judge.

SPEER, District Judge. On September 4, 1911, the Bison State Bank, a corporation and citizen of the state of Kansas, brought an action against B. J. Billington, E. B. Williams, and J. A. Dunn. The defendants are citizens of the district in which the suit was brought. The suit was on two notes, for $1,000 each and dated June 3, 1907. They became due at different dates, namely, 15 months and 27 months, respectively. It was alleged by the plaintiff that it had purchased the notes from the payee, one W. F. Thero, for value, in due course of trade, and before maturity.

The original declaration was defective, in that it did not allege that the original payee of the notes was a nonresident of the state of Texas. To cure this the plaintiff was allowed to file an amendment on March 25, 1914. For defense it was alleged in the answer that the notes were fraudulently procured by the payee, Thero, and fraudulently put into circulation. For the same purpose it was denied that the bank was an innocent purchaser. The evidence having been concluded, both the plaintiff and defendants requested the court to direct a verdict. Argument was heard, and the court instructed the jury to return a verdict for the defendants.

[1] The record does not clearly disclose why the court gave this direction, but it was alleged in the briefs and upon argument here that the court based its direction on the ground that the period of limitation, which in such actions in Texas is four years, had expired anterior to March 25, 1914, when the amended petition was filed. There is a distinct assignment of error on this ground. The instruction of the learned District Judge was apparently based on the theory that the amendment made subsequently to the expiration of the statutory period could not cure this defect; in other words, that the defendants were never before the court until the amendment was filed. This subject is treated with care in Bowden v. Burnham, 59 Fed. 752, 8 C. C. A.

248, in a decision of the Eighth Circuit Court of Appeals. There the court declared:

"But the court very properly granted the plaintiffs leave to amend their complaint, * * * and it was amended. Nevertheless the plaintiff in error asserts that as the complaint, at the time the attachment was issued, did not contain the necessary jurisdictional averments, every step taken in the cause prior to the amendment was void, and that the amendment of the complaint could not impart vitality or validity to anything done before the amendment was made. This contention is wholly untenable. It is everyday practice to allow amendments of the character of those made in this case, and when they are made they have relation to the date of the filing of the complaint or to the issuing of the writ of process amended. When a complaint is amended, it stands as though it had originally read as amended. The court in fact had jurisdiction of the cause from the beginning, but the complaint did not contain the requisite averments to show it. In other words, the [amended complaint] did not create or confer the jurisdiction; it only brought on the record a proper averment of a fact showing its existence from the commencement of the suit."

In Carnegie, Phipps & Co. v. Hulbert, 70 Fed. 209, 16 C. C. A. 498, a case before the same court, the precise question is determined as in the case at bar, in the following words:

"Where the judgment of a federal court is reversed on error because the complaint does not show the diverse citizenship necessary to sustain the jurisdiction, and thereafter an amendment is allowed below, which cures this defect, without introducing any new cause of action, the suit is deemed to have been commenced at the date of its original institution, and not at the date of the amendment."

This is our view also. It would have been an idle thing to allow the amendment, if the contrary was true. The court in fact had jurisdiction of the parties and subject-matter on the case made. Since this is true, the plaintiff will not be denied his constitutional right to bring his action in the court of the United States when the amendment made would save that right.

[2] The fraud upon which defendants rely is assigned upon the following facts: Thero approached three of the defendants, one of whom is now dead, with a view to organize a company to buy a stallion which Thero had for sale, for the price of $2,000. The two notes were signed by the defendants, for $1,000 each, upon condition that the horse was to be sold in shares of $200 each, and that the entire 10 shares should be subscribed before the notes would be delivered to Thero. The parties to the notes also agreed that the transaction was not to be considered as binding until a satisfactory pedigree was furnished with the horse. The notes were left in the hands of Billington, one of the defendants. The understanding was that he was to hold them until the entire amount should be subscribed and the pedigree furnished.

It is also urged for the defense that Thero came to Billington, and suggested that the notes be turned over to him for the purpose of getting Dunn, one of the defendants, to subscribe and sign them, agreeing to return them to Billington, to be kept until the whole transaction was completed. It is alleged that Thero, after getting Dunn's signature, instead of returning them to Billington, left that part of the country, and subsequently sold the notes to the plaintiff bank, with

which he was doing business. The price he got was the face value of the notes less six months' interest. The notes themselves did not disclose any evidence of the agreement between the makers and the payee, and were negotiable.

It was shown upon the trial that the bank had purchased the notes before maturity, for value, and without any notice whatever of any oral agreement between the parties thereto. There is no evidence to controvert this. There is a suggestion running through the entire argument of defendants' counsel to the effect that, because the notes were signed by parties out of the state of Kansas, this was sufficient to put the bank on inquiry, and that by such inquiry they would have discovered the oral agreement between the parties to the notes. We do not think, however, that because a note is made in one state, and is offered for sale before maturity in another, it is in any sense a badge of fraud or a ground of suspicion. In Swift v. Smith, 102 U. S. 442, 26 L. Ed. 193, the Supreme Court of the United States declares:

"One who purchases such paper from another, who is apparently the owner, giving a consideration for it, obtains a good title, though he may know facts and circumstances that cause him to suspect, or would cause one of ordinary prudence to suspect, that the person from whom he obtained it had no interest in it, or authority to use it for his own benefit, and though by ordinary diligence he could have ascertained those facts. * * * He can lose his right only by actual notice or bad faith."

Here the evidence does not disclose even any ground of suspicion. See, also, Hotchkiss v. National Bank, 21 Wall. 354, 22 L. Ed. 645; Murray v. Lardner, 2 Wall. 121, 17 L. Ed. 857. Again, in 192 Fed. 829, 113 C. C. A. 153, Young v. Lowry, the Third Circuit Court of Appeals declares:

"Proof, and not merely suspicious facts, is required * * * to impeach the title of the holder of negotiable paper, acquired for value and before maturity."

In King v. Doane, 139 U. S. 166, 11 Sup. Ct. 465, 35 L. Ed. 84, Mr. Justice Harlan for the United States Supreme Court, expresses the rule with the usual force and clarity of that great jurist:

"He [the party claiming to be the bona fide purchaser] cannot have judgment unless it appears affirmatively from all the evidence, whether produced by the one side or the other, that he in fact purchased for value. * * * In the case supposed he must show that he paid value. That fact being established, he would be entitled to recover, unless it is proved that he purchased with actual notice of defect in the title, or in bad faith, implying guilty knowledge or willful ignorance."

In the instant case, under the evidence, the bank was a bona fide purchaser, and had neither notice nor knowledge of any equities between the makers and the payee nor of any unfulfilled conditions. Since, under the evidence, the bank acted in good faith and without any sort of notice of stipulations which did not appear on the face of the notes, since it bought before maturity and paid value, it is clear that it, rather than the defendants, was entitled to a verdict.

Under these considerations, the case is reversed, and the cause is remanded, with instructions to grant a new trial.