## KAISER et al. v. FIRST NAT. BANK OF BRANDON.

(Circuit Court of Appeals, Fifth Circuit. December 8, 1896.)

No. 509.

1. NEGOTIABLE NOTES—BONA FIDE HOLDERS—NOTICE.

The fact that a purchaser, for valuable consideration, of negotiable notes, from a member of the payee firm, who claims to be the owner thereof, knows that the latter is the president of a bank whose indorsement in blank appears on the notes, after the indorsement of the firm, is not sufficient to put the purchaser on inquiry, or charge him with notice that the notes belong to the bank.

2. SAME.

One who was president both of the A. Bank and the B. Bank received from the president of a third bank two notes, which the latter claimed to own individually, as collateral both for balances due from his bank to the A. Bank, and for debts due by him individually to the B. Bank. The notes were kept by the A. Bank until dishonored, and until its own balances were discharged, and were then sent to the B. Bank. *Held,* that the fact that the B. Bank received physical possession of the notes after dishonor was no evidence that it was not a bona fide holder for value.

In Error to the United States Circuit Court for the Southern District of Georgia, Eastern Division.

This suit was brought by the First National Bank of Brandon, Vt., against Kaiser & Bro., to recover the amount of two promissory notes, as follows:

"$2,000.00. Brunswick, Ga., May 11th, 1893.

"Ninety days after date, we promise to pay to the order of Lloyd & Adams two thousand dollars, at Brunswick State Bank, Brunswick, Ga. Value received.

"No. 4,397. A. Kaiser & Bro.
"Due Aug. 12."

Indorsed on back:

"Lloyd & Adams.
"Brunswick State Bank, Brunswick, Ga.

"F. E. Cunningham, Cashier."

Indorsed across face:

"Noted and protested for nonpayment, Aug. 12th, 1893.
"M. P. King, Notary Public, Glynn Co., Ga."

"$3,000.00. Brunswick, Ga., May 11th, 1893.

"Four months after date, we promise to pay to the order of Lloyd & Adams three thousand dollars, at Brunswick State Bank, Brunswick, Ga. Value received.

"No. 4,396. A. Kaiser & Bro.
"Due Sept. 14."

Indorsed on back:

"Lloyd & Adams.
"Brunswick State Bank, Brunswick, Ga.

"F. E. Cunningham, Cashier."

Indorsed across face:

"Noted and protested for nonpayment, Sept. 14th, 1893.
"W. B. Cook, Notary Public, Glynn County, Ga."

The defense interposed was that the notes were without consideration, being, accommodation paper given by Kaiser & Bro. on behalf of the Brunswick State Bank on the fraudulent representations of the president of said bank, and denying that the First National Bank of Brandon obtained possession of the notes in the regular course of business, or was a bona fide holder of the same, for value, asserting that the said bank obtained the same after maturity, and after said notes were dishonored, and fully charged with notice that the said notes were fraudulently obtained.

On the trial, the uncontroverted evidence was as follows: On May 11, 1893, Charles B. Lloyd, the president of the Brunswick State Bank, by representations, subsequently ascertained to be false and fraudulent, as to the solvency of the Brunswick State Bank and of the firm of Lloyd & Adams, induced A. Kaiser & Bro. to make the notes sued on for the accommodation of the Brunswick State Bank. At that time, Kaiser & Bro. owed nothing to the Brunswick State Bank, nor did they owe Lloyd & Adams, the nominal payees of the note. Among other representations, Lloyd stated that the Brunswick State Bank and the firm of Lloyd & Adams were solvent, when, in fact, the said bank and the said firm were both insolvent. Having obtained the note from Kaiser & Bro., Lloyd indorsed the name of Lloyd & Adams thereon, and had the cashier of the Brunswick State Bank stamp the indorsement of said bank on said notes, and sign his name as cashier to attest the bank's indorsement, and then, in the latter part of May or early in June, 1893, took the notes to the Sprague National Bank of Brooklyn, N. Y., of which N. T. Sprague was president; the said Sprague being also at the time president of the First National Bank of Brandon, Vt. Mr. Sprague, president of the two banks aforesaid, testified, without contradiction, as to the negotiations then completed, as follows: "Mr. Lloyd, the president of the bank in Brunswick, brought them to the bank to get accommodations on the notes in return for favors from the Sprague Bank. * * * Mr. Lloyd said the bank was needing funds. I said: 'Mr. Lloyd, you are owing the First National Bank of Brandon, and I do not want to advance any more to you unless you give security.' His wife was present at the time, and he offered to secure me by two notes which he had, and said he owned, and that they were perfectly good. I looked it up, and found they were satisfactory. I said then: 'Mr. Lloyd, you know I am interested in one bank as much as the other,—president of the Sprague Bank, and president of the other; and I am going to have both debts secured, and whatever security you have must go, after the debts made here, to secure those of the bank there, and vice versa.' He agreed to it very readily and courteously. We agreed to it, and I rapped, and called the cashier: 'Mr. Brown, take from Mr. Lloyd those notes for the bank, and you may do so and so with them for his account until that is settled, and then they are for the Brandon Bank of Vermont, as collateral.' He said: 'Yes, sir.'" At the time of these negotiations in the parlor of the Sprague National Bank in Brooklyn, the Brunswick State Bank was then indebted to the Sprague National Bank, but owed the First National Bank of Brandon nothing. Lloyd owed the Sprague National Bank nothing, but was indebted about the sum of $8,500 to the First National Bank of Brandon.

On June 2, 1893, Kaiser & Bro. sent a telegraphic dispatch to the Sprague National Bank, as follows:

"Do you hold our two notes, two and three thousand dollars, favor of Lloyd & Adams, as collateral only Brunswick Terminal Company; Liverpool exchange it is accommodation paper. Answer.

"[Signed]                                    A. Kaiser & Brother."

To that dispatch the Sprague National Bank, by its cashier, sent the following reply:

"Brooklyn, June 2, 1893.

"A. Kaiser & Brother, Brunswick, Ga.: Telegram received. We hold notes named collateral to any indebtedness to us of said bank.

"Sprague National Bank."

The two notes in the suit were held by the Sprague National Bank from the time they were received from Lloyd until they were forwarded for collection. After protest they were returned to the Sprague National Bank; and by its cashier handed over to Sprague, president of the First National Bank of Brandon.

On June 1, 1893, the Brunswick State Bank owed the Sprague National Bank $7,744.31. On that day the accounts were balanced. Thereafter balances were struck on the following days, showing the following indebtedness: June 26, 1893, $9,512.34. Subsequently, on the same day, a new balance was struck, and it then appeared that on pending account there was due them a credit of $7,483.57. The last balance was made September 25, 1893, and on that balancing of accounts between the Brunswick State Bank and the Sprague National Bank there appeared to be due a credit to the Brunswick State Bank of $184.10. Whatever indebtedness the Brunswick State Bank owed the Sprague National Bank arose through the payment of drafts of the Brunswick State Bank, drawn on the Sprague National Bank, and the charging back to that account the unpaid discounts and expenses. Charles B. Lloyd, president of the Brunswick State Bank, died June 26, 1893. It was admitted on the trial on the part of the plaintiff that Mr. P. M. Adams, of the late firm of Lloyd & Adams, is hopelessly insolvent, and wholly incapable of responding to any judgments which may be rendered on said notes; and the following is the testimony of F. E. Cunningham, cashier of the Brunswick State Bank, whose indorsement is on the notes sued on, to wit: That the Brunswick State Bank owed the First National Bank of Brandon nothing, and had no account with it; and that the Brunswick State Bank did not discount the notes sued on for Lloyd & Adams at all, but that Mr. Lloyd just carried them there, and had him put the Brunswick State Bank's indorsement on them, to be used for the Brunswick State Bank. It was also admitted by plaintiff that the Brunswick State Bank, on the day that these notes were made, was insolvent, and had been hopelessly insolvent 60 days before that time; and that Charles B. Lloyd had absolute control of the bank, acted as board of directors, president, cashier; and that he negotiated and transacted the entire business of the Brunswick State Bank; and that these notes sued on were handed to Mr. Sprague by Mr. Lloyd, in the parlor of the Sprague Bank, in Brooklyn, N. Y. The defendants admitted on the trial that Kaiser & Bro. knew that Charles B. Lloyd was president of the Brunswick State Bank, and also knew that he owned a majority of the stock of the Brunswick State Bank.

T. P. Ravenel, for plaintiffs in error.

Samuel B. Adams and A. J. Crovatt, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and MAXEY, District Judge.

PARDEE, Circuit Judge (after stating the facts as above). Upon the foregoing facts, established by the evidence, the trial judge directed a verdict for the First National Bank of Brandon, upon which Kaiser & Bro. sued out this writ of error. Although there are numerous argumentative assignments of error, the contention is made in this court that the court erred in directing a verdict for the plaintiff below—First, because the evidence involved the right of the holders of notes which had been procured from the makers by fraud to recover against the makers, there being a conflict in the testimony as to the bona fides of the plaintiff's title, and this question should have been submitted to the jury; second, because there was proof not rebutted by the plaintiff that the notes were procured from the defendants by fraud, and there was strong proof that the plaintiff received them after dishonor.

The evidence was uncontradicted to the effect that the First National Bank of Brandon acquired an interest as pledgee in the notes in controversy from the holder, Charles B. Lloyd, who represented himself as the owner, before maturity, for a valuable consideration, and without notice, except such notice as was given by the fact that the notes presented bore an indorsement in blank by the

Brunswick State Bank, coupled with the knowledge that Lloyd, who presented the notes of which he claimed to be the owner, was the president of the Brunswick State Bank. Counsel admits the law to be that nothing short of willful ignorance, tantamount to fraud in procurement, will defeat the rights of a bona fide holder of negotiable instruments taken before dishonor, and without notice of the defect of title in the party pledging, but contends in this case that because the paper had been indorsed by the Brunswick State Bank, and was originally offered to the Sprague National Bank for the purpose of increasing its balance there, it was willful ignorance on the part of the president of the First National Bank of Brandon not to know that the notes did not belong to Charles B. Lloyd individually, but to the Brunswick State Bank.

In Bank of Edgefield v. Farmers' Co-operative Manuf'g Co., 2 U. S. App. 282, 295, 2 C. C. A. 637, 646, and 52 Fed. 98, 103, it was held by this court:

"It has been settled in the courts of the United States since the leading case of Goodman v. Simonds, 20 How. 343, that one who acquires mercantile paper before maturity from another, who is apparently the owner, giving a consideration for it, obtains a good title, though he may know facts and circumstances that would cause him to suspect, or would cause one of ordinary prudence to suspect, that the person from whom he obtained it had no interest in or authority to use it for his own benefit, and though, by ordinary diligence, he could have ascertained those facts. Swift v. Smith, 102 U. S. 442; King v. Doane, 139 U. S. 166, 173, 11 Sup. Ct. 465."

Taking the law to be as thus declared and admitted by plaintiffs in error, it is clear that the evidence, given its fullest force, does not show a case where the First National Bank of Brandon was charged with any such notice of outstanding rights and equities as put it upon further inquiry, under penalty of being charged with willful ignorance of such outstanding rights and equities.

The plaintiffs in error further contend that there was strong proof that the plaintiff, the First National Bank of Brandon, received the notes after dishonor. The evidence in this respect is that after the notes were delivered to the Sprague National Bank, which bank was the redeeming agent of the First National Bank of Brandon, they remained in the physical custody of the Sprague Bank until near maturity, when they were forwarded to other agents for collection. After the notes were protested, they were turned over to the First National Bank of Brandon. The case shows that the First National Bank of Brandon acquired conjointly with the Sprague National Bank the right and title to these notes as collateral, and that, in the pledge resulting, the Sprague National Bank was the depository. The mere fact that the physical possession of the notes remained in the hands of the Sprague National Bank until after the indebtedness of the Brunswick State Bank and the Sprague Bank was settled, and even after, would raise no presumption inimical to the rights of the First National Bank of Brandon as pledgee, if its original title as such pledgee was good. As we understand the undisputed evidence in the case, while it may not be denied that there were some circumstances attending the pledge of the notes in suit, which, if more fully explained, would have re-

lieved the case of all doubt, yet we are of opinion that the case as made permitted only one verdict responsive to and in accordance with the evidence as submitted, and that verdict was the one directed by the court, in favor of the First National Bank of Brandon. Necessarily, the judgment of the circuit court is affirmed.