## FIRST NAT. BANK OF COUNCIL BLUFFS, IOWA, v. MOORE.

(Circuit Court of Appeals, Ninth Circuit. October 1, 1906.)

No. 1,323.

1. BILLS AND NOTES—RIGHTS OF TRANSFEREE—BONA FIDE PURCHASER.

The purchaser of a promissory note for value before maturity is not deprived of his character of purchaser in good faith, by proof that he took the note with knowledge of such circumstances as ought to put an ordinarily prudent man on inquiry to ascertain the facts; but the proof must go further and show that he had at the time of the transfer knowledge of facts that would impeach the title as between the antecedent parties to the note, or knowledge of such facts that his failure to make further inquiry is presumptive evidence of bad faith on his part.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 7, Bills and Notes, §§ 821–824.]

2. SAME—BURDEN OF PROOF.

To defeat recovery by an indorsee of a promissory note for value and before maturity, on the ground that the note was given without consideration or was obtained by fraud, the burden rests upon the defendant to prove that the indorsee had knowledge of such fact or was chargeable with bad faith.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 7, Bills and Notes, §§ 1675, 1676.]

3. APPEAL AND ERROR—RECORD—EXCEPTIONS.

A bill of exceptions, which is certified by the trial judge to contain the substance of all of the testimony given on the trial, is sufficient to enable the appellate court to pass on the question whether the court erred in refusing to direct a verdict; the presumption being that nothing which is material to any of the exceptions taken was omitted from the bill.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 2911–2915, 2918–2924.]

4. BILLS AND NOTES—ACTION BY INDORSEE—DEFENSES.

Evidence considered, in an action on a promissory note, and held not sufficient to warrant the submission to the jury of the defense that an indorser for value before maturity, through whom plaintiff claimed, took the note with knowledge that it was without consideration and obtained by fraud, or of facts which impeached its good faith.

In Error to the Circuit Court of the United States for the Northern Division of the Western District of Washington.

James Kiefer and James McNeny, for plaintiff in error.

L. C. Gilman and M. M. Lyter, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and DE HAVEN, District Judge.

DE HAVEN, District Judge. This was an action brought to recover the sum of $5,000, with interest from January 2, 1897, the amount alleged to be due upon three promissory notes made by the defendant in error to the Citizens' State Bank of Council Bluffs, Iowa, assignor of the plaintiff in error. The answer put in issue the allegation of the complaint in reference to the assignment of the notes and also alleged that the action was barred by the statute of limitations. The answer further set forth that the notes sued upon were given in renewal of a note made by the defendant in error, in March, 1893, to one George J. Crane, for the sum of $5,000, and that the original note made to Crane was without consideration, and was obtained from the defendant in error by fraud and by false representations upon the part of said Crane and his partner, one F. P. Bellinger; the answer in this connection alleging:

"That the sole and only consideration for the said original note for $5,000 and several notes sued upon in this action was the agreement by and between the defendant and the said Crane and Bellinger that they, the said Crane and Bellinger, would organize a corporation under the laws of the state of Washington and transfer to said corporation, in payment for its capital stock, a secret remedy, formula, recipe or prescription for the cure of the morphine, cocaine, chloral, opium, liquor, tobacco and other drug habits and the diseases and infirmities caused by the habitual use of such drugs and to transfer to the defendant one-fifth of the capital stock of the said corporation."

"That, with intent to cheat and defraud the defendant and to induce him to execute and deliver the said original note of $5,000, the said Crane and Bellinger falsely and fraudulently represented and pretended to the defendant that the said Bellinger was the discoverer of, and author of, and in possession of, the said secret remedy. formula, recipe or prescription, and that the said was a secret and known only to the said Bellinger, and the same was a sure and certain cure and a specific for the said habits and diseases. and that they intended to deliver the said secret formula to the said corporation; that the said Crane and Bellinger, on the 15th day of March, 1893, procured a corporation to be organized, under the laws of the state of Washington, and then represented and pretended that they had transferred and assigned to the said corporation the said remedy, formula, recipe or prescription in payment for the entire capital stock of said corporation; that, relying on the said representations, and believing them to be true, the defendant gave to the said Crane and Bellinger the said original note for $5,000; that the said representations and pretenses of the said Crane and Bellinger were and are wholly false and untrue and were known to be so by the said Crane and Bellinger when made; that the said Crane and Bellinger had not nor had either of them any secret or other remedy, formula, recipe or prescription for the cure of the said habits and diseases or either or any of the said habits and diseases, and they had not nor had either of them any intention to deliver to the said corporation any secret or other remedy, formula, recipe or prescription for the cure of any or either of the said diseases or habits, * * * and the stock of the said corporation is and was wholly worthless and of no value whatsoever and was known to be so by the said Crane and Bellinger."

The answer further alleges that the Citizens' State Bank of Council Bluffs acquired said original note after maturity, without paying value therefor, and with notice that the same was without consideration and had been obtained from the defendant in error by the fraudulent representations of the payee therein, and that, in order to induce the defendant in error to execute the notes sued on in this action, in renewal of the said note for $5,000, the Citizens' State Bank of Council Bluffs falsely represented to him that it had taken said original note for $5,-000, in the ordinary course of business before maturity, and had paid value therefor, without notice of any defense thereto, and that, believing these representations to be true, he executed to the Citizens' State Bank of Council Bluffs the notes sued upon. The defense of the statute of limitations does not seem to have been relied upon at the trial. It appears from the evidence that the assignor of the plaintiff in error, the Citizens' State Bank of Council Bluffs, Iowa, acquired the original note executed by the defendant in error to George J. Crane, before maturity in due course of business and for value; that is, it appears that the note was indorsed by Crane to said bank as collateral security for a previously existing indebtedness of Crane to the bank. There was also evidence tending to show that the original note executed by the defendant in error to Crane was without consideration and was obtained from the defendant in error by means of the false and fraudulent representations alleged in the answer. When the testimony was closed, the plaintiff in error moved the court to give to the jury a peremptory instruction to find a verdict for it for the full amount sued for, stating as one of the grounds of the motion that the evidence was insufficient to show that the Citizens' State Bank of Council Bluffs, at the time of acquiring the original note, had knowledge or notice that the same was without consideration, or had been obtained from the defendant in error by fraudulent representations. The motion was denied, and this ruling was duly excepted to. The court then gave to the jury the following, among other instructions:

"If the jury find from the evidence that, when the Citizens' State Bank of Council Bluffs, Iowa, received the note made by the defendant for $5,000 in favor of George J. Crane, in March, 1893, the officers of said bank knew of nothing to apprise them or put them upon inquiry with respect to the claim now made by the defendant that the note was given without consideration or procured by fraud, the verdict of the jury will be for the plaintiff for the full amount sued for."

The foregoing is substantially in the language of one of the instructions requested by the plaintiff in error, and then the court added:

"Now, gentlemen of the jury, there is a question in the case as to which there is a conflict of testimony, and it is referred to the jury to decide what the truth about it is, whether there was knowledge on the part of the cashier, or whoever acted for the Citizens' State Bank of Council Bluffs at the time of receiving that $5,000 note. It is shown by uncontradicted evidence that the transaction was through Mr. Hannan, who was an officer of the bank at that time, and whose deposition has been taken in this case. Mr. Hannan will be presumed, as the result of the uncontradicted testimony in the case, to have been authorized to act for the bank in that matter, and any knowledge or information which he had on the subject is to be imputed to his principal, the bank for which he was acting, and the jury must determine this question of whether he knew of the fact that Mr. Moore had been swindled (if in fact

lie was swindled) in the transaction by which the note was obtained by him In determining that question you are to consider all the facts and circumstances attending the transaction and showing what knowledge Mr. Hannan did have in regard to the maker and the payees of the note and in regard to their dealings together with respect to that note and the circumstances under which the note was obtained, and determine from a consideration of the testimony whether the evidence shows that Mr. Hannan did know of enough of the transaction to have put a prudent man on inquiry before accepting the note as a purchaser of it in good faith. The bank is chargeable, not only with the knowledge which Mr. Hannan actually did have, but, if there was some knowledge on his part which should have been a warning to him and would have caused a prudent business man to have made inquiry, then the bank is chargeable with all the knowledge that might have been obtained by an inquiry, and, if there was a swindle practiced, and the bank, through Mr. Hannan, knew it or should have known it, then the note was equally void in the hands of that bank as in the hands of Crane and Bellinger, and, if void in the hands of the Citizens' State Bank, it is likewise void in the hands of the plaintiff bank."

The bill of exceptions shows that the plaintiff in error excepted to so much of the foregoing instruction as states that:

"Any knowledge of Hannan or information which he might have which would put a prudent man upon inquiry, was to be imputed to the bank and considered the knowledge of the bank so far as anything which might have been found out by inquiry goes."

· The court, also, at the request of the defendant, instructed the jury as follows:

· "I charge you that, if you shall find from the evidence that said note was fraudulent and without consideration in its inception, then the burden of proof is upon the plaintiff to establish by preponderance of evidence that the Citizens' State Bank was a bona fide holder of said note, and, if you shall find from the evidence that the said note was fraudulent and without consideration in its inception, and shall further find that the plaintiff has not established by a preponderance of the evidence that the same was taken in due course of business without notice of such fraud, then your verdict must be for the defendant." ·

This instruction was also excepted to by the plaintiff in error. The verdict of the jury was for the defendant, and judgment was thereupon rendered in his favor. The case is brought here by the plaintiff on writ of error. There are many assignments of error, but we only deem it necessary to notice those which relate to the rulings of the court in refusing to instruct the jury to return a verdict for the plaintiff, and in giving the foregoing instructions to which exceptions were taken.

1. The defendant in error has interposed a motion to strike from the printed record what purports to be the bill of exceptions, on the ground that it does not constitute a sufficient or legal bill of exceptions, in that the exceptions "to the instructions given and refused by the court appear to have been taken in solido, and not specifically to separate and distinct propositions of law involved in said instructions." The motion must be denied. The exceptions to the instructions given are sufficient. The bill of exceptions is in proper form, and the court has had no difficulty in determining therefrom the various rulings excepted to. Objection is also made to the sufficiency of the assignments of error, but in our opinion the objection is without merit.

2. In passing upon the questions raised by the assignments of error, it will be more convenient to first consider whether, upon the assump-

tion that the evidence was sufficient to carry the case to the jury, the instructions given by the court were correct. The instruction above quoted, to the effect that the assignor of the plaintiff, the Citizens' State Bank, was chargeable not only with the knowledge which its cashier actually had at the time the original note to Crane was transferred to it, "but if there was some knowledge on his part which should have been a warning to him, and would have caused a prudent business man to have made inquiry, then the bank is chargeable with all the knowledge that might have been obtained by an inquiry," is not in accordance with the rule declared in Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865; Goodman v. Simonds, 20 How. 343, 15 L. Ed. 934; Murray v. Lardner, 2 Wall. 110, 17 L. Ed. 857; Hotchkiss v. National Bank, 21 Wall. 354, 22 L. Ed. 645; Collins v. Gilbert, 94 U. S. 753, 24 L. Ed. 170; Swift v. Smith, 102 U. S. 442, 26 L. Ed. 193; Kaiser v. First National Bank, 78 Fed. 281, 24 C. C. A. 88; Doe v. Northwestern Coal & Transporation Co. (C. C.) 78 Fed. 62.

In discussing the rights of the holder of negotiable paper acquiring title thereto by indorsement before maturity and for value, the court, in Murray v. Lardner, 2 Wall. 110, 17 L. Ed. 857, said:

"Suspicion of defect of title or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker, at the time of the transfer, will not defeat his title. That result can be produced only by bad faith on his part. * * * Such is the settled law of this court, and we feel no disposition to depart therefrom. The rule may perhaps be said to resolve itself into a question of honesty or dishonesty, for guilty knowledge and willful ignorance alike involve the result of bad faith. They are the same in effect. Where there is fraud there can be no question."

In Doe v. Northwestern Coal & Transportation Co. (C. C.) 78 Fed. 62, the same rule was declared by this court, in the following language:

"In the federal courts it is the well-settled rule that the purchaser of a promissory note is not deprived of his character of purchaser in good faith by proof that he took the note with knowledge of such circumstances as ought to put an ordinarily prudent man upon inquiry to ascertain the facts. The proof must go further, and show that he had at the time of the transfer knowledge of facts that would impeach the title as between the antecedent parties to the note, or knowledge of such facts that his abstention from further inquiry will be tantamount to a willful closing of the eyes to the means of knowledge which he knows are available, and therefore presumptive evidence of bad faith upon his part.

3. We think the court also erred in giving to the jury, at the request of the defendant in error, the following instruction:

"I charge you that, if you shall find from the evidence that said note was fraudulent and without consideration in its inception, then the burden of proof is upon the plaintiff to establish by preponderance of evidence that the Citizens' State Bank was a bona fide holder of said note, and, if you shall find from the evidence that the said note was fraudulent and without consideration in its inception, and shall further find that the plaintiff has not established by a preponderance of the evidence that the same was taken in due course of business without notice of such fraud, then your verdict must be for the defendant."

There are undoubtedly many cases which hold, in accordance with this instruction, that when, in an action by an indorsee for value and

before maturity of a promissory note, it is shown that the note was given without consideration, or was obtained by fraud, the burden is then cast upon the plaintiff to show that he acquired the same without notice of such want of consideration or fraud in its inception. Thompson v. West, 59 Neb. 677, 82 N. W. 13, 49 L. R. A. 337; Canajoharie National Bank v. Diefendorf, 123 N. Y. 191, 25 N. E. 402, 10 L. R. A. 676; Vosburgh v. Diefendorf, 119 N. Y. 357, 23 N. E. 801, 16 Am. St. Rep. 836.    But in the federal courts it may be now considered as the settled rule that a person who takes negotiable paper before maturity for value is entitled to recover as against the maker, unless it is shown that, in the transaction by which title was acquired, the indorsee had knowledge of facts which would render the same invalid as against the maker, or was guilty of bad faith, and the burden of proving such knowledge or bad faith lies on the defendant.    Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865; Murray v. Lardner, 2 Wall. 110, 17 L. Ed. 857; Hotchkiss v. National Bank, 21 Wall. 354, 22 L. Ed. 645; Collins v. Gilbert, 94 U. S. 753, 24 L. Ed. 170; King v. Doane, 139 U. S. 166, 11 Sup. Ct. 465, 35 L. Ed. 84.

4. There remains for consideration only the question whether the court erred in refusing to instruct the jury to return a verdict for the plaintiff in error.    The bill of exceptions, in setting forth the testimony of some of the witnesses, purports to give the substance of their testimony, and the judge, in certifying to the correctness of the bill, only certifies that it "contains all of the testimony in substance taken and admitted upon the trial of said cause."    It is claimed by the defendant in error, upon this state of facts, that the bill of exceptions does not show that it contains all of the evidence given upon the trial, and for that reason the question whether the court erred in refusing to instruct the jury to return a verdict for the plaintiff in error cannot be considered.    The cases of Gulf, C. & S. F. R. Co. v. Washington, 49 Fed. 347, 1 C. C. A. 286, and National Masonic Acc. Ass'n v. Shryock, 73 Fed. 776, 20 C. C. A. 3, cited by the defendant in error, seem to sustain his contention.    The decisions referred to are entitled to great respect, but upon a question of practice, such as this, we think it better to adopt a more liberal rule.    It is, of course, true that, in order to enable this court to determine whether the evidence was such as to justify the trial court in submitting the case to the jury, the court must have before it all of the evidence, and the bill of exceptions must show this; but we are of the opinion that a bill of exceptions, which is certified by the trial judge to contain the substance of all of the testimony given upon the trial, is sufficient to enable us to pass upon that question.    A bill of exceptions and the certificate thereto should receive a reasonable interpretation, and, when the judge in settling the bill certifies that it contains the substance of all of the testimony admitted upon the trial, the presumption must be that nothing which was material to any of the exceptions taken is omitted therefrom.    The sufficiency of such a bill of exceptions was before the court in Cavender v. Roberson, 33 Kan. 626, 7 Pac. 152, and in answer to the objection that the case made did not purport to contain all of the evidence, that court said:

"The case does, however, show that it contains the substantial parts of the evidence, and we construe this to mean that it contains, in substance, all the evidence offered upon the trial, although it is not written out in the record in minute detail."

So, also, in Townley v. Chicago, Milwaukee & St. Paul Ry. Co., 53 Wis. 626, 11 N. W. 55. The question before the court was whether the evidence was sufficient to justify a nonsuit. The court said:

"But counsel contend that the bill of exceptions is not certified to contain all the evidence, and that we must therefore presume that there was other evidence not before us which justified the nonsuit. The certificate is in these words: 'The foregoing is the substance of all the testimony given on the trial of said action.' The learned counsel for the railroad company has referred us to quite a number of Iowa cases holding similar certificates insufficient. But this is a question of practice, and, with great deference for the Iowa court, we feel justified in following our own decisions. Besides, we think the distinction made by that court is a little too refined for practical purposes. Here the trial judge certifies, in effect, that the bill of exceptions contains 'the substance of all the testimony' upon which he granted the nonsuit, and yet we are asked to find that he must have granted it upon some other testimony. To so hold would, in our judgment, disregard substance for mere form."

Our conclusion upon this point is that the question is sufficiently presented by the bill of exceptions, and we therefore proceed to inquire whether, in view of the evidence, the court erred in refusing to direct a verdict for the plaintiff in error. The written assignment, under which the plaintiff in error claims title to the notes sued on, purports to have been signed thus, "Citizens' State Bank, by Charl R. Hannan, Cashier," and there was evidence tending to show that Hannan never signed, nor authorized any one else to sign, his name to this instrument; but the fact appears from the evidence, and is undisputed, that the Citizens' State Bank delivered these notes and the purported assignment to the plaintiff in error for value, and that this was done by the Citizens' State Bank for the purpose of transferring the title to such notes to the plaintiff in error. This being so, the title of such notes was by such assignment and delivery vested in the plaintiff in error as against the Citizens' State Bank, and constitutes it the owner and holder of such notes. This is not disputed by the counsel for the defendant in error, who very properly concede in their brief "that these notes were assigned after maturity by the Citizens' State Bank to the plaintiff in error." The plaintiff in error then succeeded to all the rights of the Citizens' State Bank, and, as that bank acquired title to the original note which forms the consideration of those involved in this action, before maturity and for value, the plaintiff in error was entitled to a peremptory direction to the jury to return a verdict in its favor, unless the evidence was sufficient to show that, when such original note was acquired by the Citizens' State Bank, it had knowledge that it was without consideration, or had been obtained from the defendant in error by means of the fraudulent representations alleged in the answer. The only evidence in the record bearing upon this question is contained in the deposition of the witness Hannan, who was cashier of the Citizens' State Bank at the time, and acted for it in the transaction by which it acquired title to the said original note. Of course, whatever knowledge Hannan then had in

relation to the consideration or origin of that note must be imputed to the bank for which he acted. The testimony of Hannan in relation to his knowledge, as it appears in the record, omitting the questions, to which his answers were given, is as follows:

"I did take from George J. Crane a note signed by Mr. Moore. It was while I was cashier of the Citizens' State Bank. I had learned from Mr. Crane of the transaction he had with Mr. Moore, and he had advised me of the details of the deal, and that he had Mr. Moore's note. Mr. Crane at that time was owing us quite a sum of money, the collateral to which I did not consider of much value, and, being anxious to obtain as much collateral as possible for the note, prevailed on him to turn the note over to us, which he eventually did. * * * Mr. Crane had fully explained to me just what he was doing—explained what they tried to do in Denver, San Francisco, and other places before they went to Seattle—and I was fully advised at all times as to what he was doing. I knew full well what the note was given for; it having been given for the recipe and privilege of using the recipe for an opium and whisky cure. * * * I state that I knew all about the consideration for the original note. * * * Mr. Crane advised me upon his return to Council Bluffs from Seattle and the West how he had obtained Mr. Moore's note. This was prior to our taking the note."

This is the entire evidence bearing upon the question under consideration, and we think it must be conceded that it falls far short of showing that Hannan knew or had notice of anything tending to show that the note was without consideration, or had been obtained by the fraudulent representations set forth in the answer. It does show that Hannan was advised as to the consideration of the note, and that it was given in consideration of stock in a corporation represented to be the owner of a secret formula or prescription for the cure of the morphine, cocaine, and other drug habits; but there is nothing which tends to show that he knew that such alleged formula or remedy was worthless, or that the payees of the original note had failed to transfer or deliver to said corporation any such formula or prescription, or that the stock of said corporation was worthless, or that Crane or his partner, Bellinger, had made false representations as to the character of such formula or prescription, or made any of the fraudulent representations set out in the answer. Knowledge of the consideration will not prejudice the rights of the purchaser of a negotiable note, unless the consideration was illegal, or the purchaser knew that the same was without value. This witness further testified:

"I wrote Mr. Moore many letters, or caused them to be written, in behalf of the Citizens' State Bank of Council Bluffs, always claiming that the bank had acquired the entire note in good faith, for value, and without notice, as the letters written by me while in the bank will show."

And there is nothing in his testimony to warrant the inference that, when he wrote such letters, he did not believe them to be true. In the absence of evidence tending to show that the witness Hannan knew or had notice of the facts relied upon by defendant in error to show want of consideration for the original note, or that such note was obtained from him by the fraudulent representations claimed, the jury should have been instructed to find for the plaintiff in error.

Judgment reversed, and cause remanded for a new trial.