AMALGAMATED SUGAR CO. v. UNITED STATES NAT. BANK OF PORTLAND, OR.

(Circuit Court of Appeals, Ninth Circuit. May 23, 1911.)

No. 1,905.

1. BANKS AND BANKING (§ 166*)—CHECKS—TRANSFER—BONA FIDE PURCHASER.
   Defendant drew a check on its bank in O., and by indorsement made the check payable to its deposit bank in L., which thereafter became insolvent. The check was credited to defendant on the books of the L. Bank and sent to plaintiff, the L. Bank's correspondent for collection and credit. Plaintiff on receiving the check, payable by indorsement to the order of any bank or banker, in a letter advising that it was inclosed for collection and credit, credited the amount to the L. Bank's general account, and thereafter paid drafts against the account and made remittances to the L. Bank, so that its credit at the close of business on October 10th, when the L. Bank closed its doors, was much less than the amount of the check which, on being presented to the drawee bank for payment, payment was refused because defendant had ordered payment stopped. Held, that plaintiff bank was a bona fide purchaser of the check for value, and not a mere subagent of the insolvent bank for collection and credit, and was therefore entitled to recover in the absence of proof that he purchased the check with actual knowledge of the deposit bank's insolvency or any infirmity connected therewith.
   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 574–578; Dec. Dig. § 166.*]

2. BANKS AND BANKING (§ 166*)—CHECKS—INDORSEMENT—RIGHTS OF INDORSEE.
   The rights of plaintiff bank as a bona fide purchaser being determined in accordance with the legal as distinguished from the equitable rights of the parties, it was entitled to recover the whole amount of the check, and was not subject to a deduction to the amount in its hands to the credit of the indorsing bank at the time of the latter's failure.
   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 574–578; Dec. Dig. § 166.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the Circuit Court of the United States for the District of Oregon.

Action by the United States National Bank of Portland, Or., against the Amalgamated Sugar Company. Judgment for plaintiff (179 Fed. 718), and defendant brings error. Affirmed.

The defendant in this action drew a check on its banker for $4,000, which in due course of banking business was received by the plaintiff, properly indorsed, and without knowledge of any defect impairing its commercial value. When presented for payment, the bank upon which it was drawn refused to pay for the reason that the drawer had ordered payment stopped. Thereupon the plaintiff instituted this action, and a judgment was rendered in its favor for the amount of the check with interest and costs; and to test the validity of that judgment the defendant has brought the case to this court by a writ of error.

The undisputed facts of the case are as follows: The defendant is a corporation actively engaged in business at Ogden, in the state of Utah, and at La Grande, in the state of Oregon, and for convenience kept a bank account in each of said places, its La Grande banker, at the times of the transactions involved, being the Farmers' & Traders' National Bank, which for convenience will be hereafter referred to in this opinion as the "insolvent bank." The plaintiff is a national banking association located at Portland, in the state of Oregon, and was at the times referred to the Portland correspondent of the insolvent bank. The check on which the action is founded was drawn by the defendant on its Ogden banker, and was by indorsement made payable to the order of the insolvent bank and delivered to it, and the amount thereof was at once credited to the defendant on its deposit account subject to check. Only a few checks against that account were subsequently paid, amounting in the aggregate to less than the balance in the defendant's favor immediately before it was augmented by the credit of $4,000 entered on account of said check. The deposit was made in accordance with the usual custom in that bank by accompanying the indorsed check with a depositor's memorandum slip on which there was printed the following specification of conditions: "Items listed hereon are taken at owner's risk until we have reduced to our own possession the funds received by us in settlement thereof, and credits or remittances made by us therefor are subject to revocation until we have received actual final payment. Mediums of collection employed are your agents, and we assume no responsibility for their neglect, default, or failure. In making this deposit, the depositor expressly assents to the foregoing conditions." The deposit was made October 6, 1908; the bank continued as a going concern until the close of the business day of Saturday, October 10th. On Monday, the 12th, it was not opened for business, and it was not until that day, or the day following, that the parties to this action were informed of its insolvent condition. October 8, 1908, the plaintiff received the check, made payable by indorsement to the order of any bank, or banker, inclosed in a letter from the insolvent bank, saying, "Inclosed find for collection and credit," which words we interpret to mean that the check was transmitted for collection and the amount when collected to be credited to the transmitter on its current account. The plaintiff according to its habitual practice immediately entered credit to the insolvent bank for the amount of the check on its current account, and thereafter paid drafts against that account and made remittances to the insolvent bank, so that its credit balance was reduced to the sum of $1,839.01 at the close of business October 10th and to $9.85 on October 12th, which by the return of remittances not received by the insolvent bank was increased to $376.37. The plaintiff sent the check to its correspondent at Salt Lake for collection, and it was presented for payment October 14th after the defendant had notified the drawee to stop payment.

Snow & McCamant (Geo. B. Guthrie, on the brief), for plaintiff in error.

Chamberlain, Thomas & Kraemer (Lester W. Humphreys, on the brief), for defendant in error.

Before MORROW, Circuit Judge, and HANFORD and WOL-
VERTON, District Judges.

HANFORD, District Judge (after stating the facts as above).  [1]
One or the other of the parties to this lawsuit must necessarily suffer
a loss because of the insolvency of the first indorsee of the check, and
the question as to which must bear the loss must be decided in ac-
cordance with their respective legal rights.  The reasons are obvious
and sufficient for holding that the insolvent bank did not acquire any
proprietary right to the check which could be maintained against the
defendant, if rights of a third party were not involved.  The check,
however, was negotiable paper, and the unrestricted indorsement
thereof by the defendant, who was the drawer, payee, indorser, and
real owner, warranted uninformed persons in receiving it, bona fide,
as paper which the insolvent bank could rightfully dispose of.

This case is easily distinguishable from the cases cited by counsel
for the plaintiff in error, of which Evansville Bank v. German Amer-
ican Bank, 155 U. S. 556, 15 Sup. Ct. 221, 39 L. Ed. 259, is a sample.
In that case a draft was transmitted for collection to the Fidelity
National Bank of Cincinnati, a few days before the insolvency of that
bank became known to its patrons.  The letter in which it was trans-
mitted was similar to the letter in which the defendant's check was
transmitted to the plaintiff, but the indorsement on the draft was in
the following words: "Pay Fidelity National Bank of Cincinnati, or
order, for collection, for German American Nat'l Bank of Peoria,
Ill's."  That form of indorsement divested the draft of its negotiable
quality, and the difference between that case and this one is as wide
as the difference between negotiable and nonnegotiable instruments.
The plaintiff had a legal and moral right to buy the check, and it is
the opinion of this court that it did buy the check, and that the pur-
chase was fully consummated before any of its officers or agents were
apprised of the insolvency of the first indorsee or of the defendant's
ownership.  If it had merely received the check, given credit for it by
a book entry and passed it on to another bank for collection, without
having given anything in exchange, the case would be different, but
by reason of the plaintiff's relationship to the insolvent bank as its
Portland correspondent and of their method of doing business with
each other the plaintiff had a right to absorb and appropriate to its
own use negotiable paper received from the insolvent bank in ex-
change for drafts paid and remittances made and debited to that bank
in its current account, prior to notice of its insolvency, and, when
the check was credited in that account, the amount of money which
it represented was, in legal effect and actually, subtracted from the
plaintiff's assets and added to the assets of the insolvent bank.  Com-
mercial Bank of Pennsylvania v. Armstrong, 148 U. S. 50, 13 Sup.
Ct. 533, 37 L. Ed. 363.

The whole argument in behalf of the defendant seems to be
grounded upon an idea that the letter of transmittal from the insol-
vent bank constituted the plaintiff a subagent and that, having re-
ceived for collection and credit a check made payable to the defend-

ant's order, the subagent could not become a bona fide purchaser, for the reason that the circumstances mentioned were suggestive of possible rights of the defendant which an agent should protect and sufficient to put an ordinarily prudent person on inquiry, and therefore sufficient to charge the subagent with actual knowledge of the facts which would have been discovered by diligence. That idea is opposed to principles of commercial law established by decisions of the Supreme Court. Goodman v. Simonds, 20 How. 343, 15 L. Ed. 934; Murray v. Lardner, 2 Wall. 110, 17 L. Ed. 857; Smith v. Sac County, 11 Wall. 139, 20 L. Ed. 102; Hotchkiss v. National Bank, 21 Wall. 354, 22 L. Ed. 645; Commissioners v. Clark, 94 U. S. 278, 24 L. Ed. 259; Swift v. Smith, 102 U. S. 442, 26 L. Ed. 193; Stewart v. Lansing, 104 U. S. 505, 26 L. Ed. 866; Pana v. Bowler, 107 U. S. 529, 2 Sup. Ct. 704, 27 L. Ed. 424; King v. Doane, 139 U. S. 166, 11 Sup. Ct. 465, 35 L. Ed. 84. One of the rules deducible from this list of cases is that, in an action by an indorsee upon a negotiable instrument vitiated by fraud in its inception or issued without consideration, the plaintiff, to prevail, must prove affirmatively that he paid value. That fact being established, he will be entitled to recover unless it is proved that he purchased with actual knowledge of the defective title, or in bad faith, implying guilty knowledge, or willful ignorance. Circumstances which presumably would put a prudent buyer on inquiry are not enough, but to defeat an action by an indorsee of negotiable paper who obtained it in due course of business, before its maturity, and paid value for it, actual knowledge of facts sufficient to constitute a valid defense, if the action were prosecuted by the mala fide indorser, must be proved affirmatively. This rule in all of its rigor was applied by this court in the case of the First National Bank v. Moore, 148 Fed. 953, 78 C. C. A. 581. In this case the element of fraud on the part of the insolvent bank in wrongfully disposing of the check in a manner to increase its own assets without giving value in exchange must be held to be wholly irrelevant to the issue to be determined, viz., which one of two equally innocent parties shall bear the consequent loss. The parties before the court are equally innocent, for, if it be true that the plaintiff might have avoided the loss by an inquiry, it is also true that the defendant might have avoided the loss by making its indorsement of the check in a form which would have made the fraudulent conversion of it before payment a legal impossibility.

[2] The defendant insists that, in the event of the failure of its general defense, there should be a reduction of the plaintiff's demand equal in amount to the credit balance in favor of the insolvent bank in its account with the plaintiff. This contention is advanced upon a theory that a fraud was committed by the receipt and disposal of the check by an insolvent, that springing from that fraud a trust attached to that balance, and that as the beneficiary of that trust the defendant may, by right of subrogation, use said balance as a set-off. In answer to this contention, it is sufficient to repeat that the case must be determined in accordance with the legal rights of the parties. Equitable defenses cannot be admitted. It is the opinion of the court that the

plaintiff acquired a clear, legal, proprietary right to the check and the right to compel payment in full, and that the defendant has not pleaded nor proved any counter demand against the plaintiff cognizable in an action at law.

Judgment affirmed.