## MACK v. DAILEY.

(Circuit Court of Appeals, Second Circuit. November 17, 1924.)

No. 75.

1. **Bills and notes ⟪⟫537(6)—Evidence that plaintiff was bona fide holder for value held to leave no issue for jury as to his good faith.**

Evidence that plaintiff took note in good faith for value and before maturity *held* to leave no issue of fact for the jury as to his good faith, in view of Negotiable Instruments Law N. Y. §§ 91, 96, made applicable by reason of Rev. St. U. S. § 721 (U. S. Comp. St. § 1538).

2. **Bills and notes ⟪⟫489(1)—Where only issue is as to whether plaintiff is good faith holder for value, reception of evidence not directed to that issue held error.**

In an action on a negotiable promissory note, the only issue being whether plaintiff was a bona fide holder for value, before maturity, and without notice, it was error to receive testimony not directed to that issue.

In Error to the District Court of the United States for the Western District of New York.

Action by Joseph Mack against J. Oswald Dailey. Judgment for defendant, and plaintiff brings error. Reversed, and new trial granted.

The parties are referred to herein as plaintiff and defendant as they appeared in the court below. The facts are stated in the opinion.

Max Kahn, of Detroit, Mich. (Raymond C. Vaughan, of Buffalo, N. Y., of counsel), for plaintiff in error.

Fluhrer & Reed, of Albion, N. Y., for defendant in error.

Before ROGERS and MANTON, Circuit Judges, and LEARNED HAND, District Judge.

ROGERS, Circuit Judge. The plaintiff, a resident of the state of Michigan, brought this action against the defendant, a resident of the state of New York, to recover the sum of $20,001.56, with interest thereon from September 18, 1920. The case was submitted to a jury, and a verdict was rendered for the defendant of no cause of action.

The action was brought to recover upon a negotiable promissory note made on September 18, 1920, and delivered to the payee A. W. Wallace & Co. The complaint alleged that this note was indorsed over to the plaintiff before its maturity, and for a good and valuable consideration, and that he is a holder in good faith.

The defendant in his answer admitted that he made the note and delivered it for value to A. W. Wallace & Co.; but he denied that the note was regularly transferred to the plaintiff for value, and alleged that it was transferred to him after maturity, without value, and fraudulently. It also alleged that the note was originally procured by A. W. Wallace & Co. fraudulently and without value. It further alleged that A. W. Wallace & Co. obtained the note under the following circumstances:

The company agreed to sell to defendant shares of stock in the American Silver Corporation to the value of $25,000. That for the purpose of inducing the defendant to purchase the stock it was represented and warranted to defendant that the stock would be listed and placed for sale on the New York Curb Market by November 1, 1920, which event would greatly enhance its value. That they further represented and warranted that within two months thereafter the American Silver Corporation would be shipping silver to the United States mint. That defendant, in reliance on these representations, purchased the stock, and in part payment therefor gave to A. W. Wallace & Co. the note in question and $5,000 in cash. That the stock, however, was never listed on the New York Curb Market, and that the American Silver Corporation has at no time shipped any silver to the United States mint. That the shares of stock were never delivered to defendant.

The defendant in its answer also alleged that the original note, which was payable in 30 days from its date, was renewed from time to time; the note sued upon being the third renewal note; that each of the renewal notes were delivered to A. W. Wallace & Co. with the express agreement and understanding that it was to hold them in their possession and custody, and that the same were not to have any validity, or become binding obligations, unless the stock was listed on the New York Curb Market, the Boston Stock Exchange, and silver was shipped to the United States mint as above stated.

It is clearly established that the understanding between A. W. Wallace & Co. and the defendant was that, if the defendant would give his check for $5,000 and his note for $20,000, the brokers would see that he received 20,000 shares of the stock of the American Silver Corporation at $1.25 a share, and that the note would not be binding unless within a very short time the stock was listed on the New York Curb Market and on the Boston Stock Exchange, and silver was shipped to the United States mint. It was also understood that the note would

be held in the office of A. W. Wallace & Co., and would not be sold or used as security, or in any way, until the conditions above stated were fulfilled. The undisputed evidence shows that the stock was never listed, either on the New York Curb Market or on the Boston Stock Exchange, and also that no silver was at any time shipped by the corporation to the United States mint.

The original note, which the defendant gave, was renewed from time to time; the same representations being made that the listing of the stock on the New York Curb and on the Boston Stock Exchange were about to be consummated, and that silver was about to be shipped to the United States mint; that until those conditions were met the note would be kept at the office of the brokerage house of A. W. Wallace & Co., and would not be sold or used in any way, and would not become a binding obligation.

It appears that at the close of the case the plaintiff's counsel moved for the direction of a verdict for the plaintiff, on the ground that it had not been shown that the plaintiff was not a bona fide holder for value and before maturity. Then occurred this colloquy:

"The Court: The defendant has not shown it?

"Mr. Kahn: No; the defendant has not shown that fact, and the plaintiff has shown that he paid a fair valuation for this note without notice before maturity, and he is the holder in due course. Under the federal rule the burden is on the defendant to show that he had notice.

"The Court: Don't you think the question of notice is out of the case?

"Mr. Kahn: No, your honor. I should say the question of notice was a very vital issue in this case. The defendant must show as he alleges in his answer.

"The Court: That is one of the defenses, but they also defend on the ground there was no value given for this note.

"Mr. Kahn: You mean in the beginning?

"The Court: Yes.

"Mr. Kahn: Here is a bona fide holder in possession of it. While that defense would be good against A. W. Wallace & Co., if they proved fraud—

"The Court: The plaintiff must prove that he paid value for the note.

"Mr. Kahn: Yes; and the plaintiff has proved that he paid value for this $20,000 note. In other words, when we start our case and offer the note in evidence, that makes a prima facie case. Then, if the defendant offers any evidence of fraud—we

don't claim that he has proven any fraud— then the burden is on the plaintiff to show that he paid valuable consideration for the note. We started out and proved a prima facie case first. Now the burden is on the defendant under the federal rule to prove all of his defenses. He introduced testimony here that might be urged to constitute fraud. In order to save any argument at that time, we elected to put Mr. Mack on the stand and prove that he paid valuable consideration for that note. Having done that, we have met the burden of proof. Then the defendant must go on and prove their defense. We are not obliged to prove anything, except our prima facie case, unless fraud is proven in the case, and I take the position that no fraud has been proven under the federal rule which requires us to prove value. But we have gone ahead and proven value, and I claim that now the burden shifts to them, and that they have not met it.

"The Court: What is the use of their proving that he had notice of defect of title, when you say there is no evidence of fraud, as testified to by the defendant, in the case?

"Mr. Kahn: There is no proof of any notice here.

"The Court: I will admit that, but don't understand they are resting on that defense.

"Mr. Kahn: Then certainly there is no issue of fact. It is purely a question of law, if they can't show that Mr. Mack had notice, and they can't show that he didn't pay value. If they can't show all of these defenses, then Mr. Mack is entitled to a recovery.

"The Court: Yes; if he shows that he paid value.

"Mr. Kahn: Yes; and he has shown that.

"The Court: What do you want to say to that? They ask me to direct a verdict in favor of the plaintiff. I will hear what you have to say on the question.

"Mr. Reed: We say it is a question of fact for the jury.

"The Court: I think so, too. Motion denied.

"Mr. Kahn: I take an exception, if the court please. Before you rule on the question finally, I would like to submit you some authorities.

"The Court: I have looked up the authorities.

*    *    *    *    *

"The Court: I think the issue should be submitted to the jury as to false representations, as to whether or not those were fraud, and whether or not there was breach

of faith; also as to whether the note was obtained by the plaintiff under payment by him of good and valuable consideration.

"Mr. Kahn: Without notice.

"The Court: I don't think the question of notice is here. There has not been any evidence given as to that.

"Mr. Kahn: As I take it—

"The Court: I think the only question of fact here is whether the holder of this note paid value for it.

"Mr. Kahn: That is the only question of fact?

"The Court: That is the only question of fact.

\* \* \* \* \*

"Mr. Kahn: Then the only question for the jury is whether or not the plaintiff paid value for the note.

"The Court: Yes; I think so.

\* \* \* \* \*

"The Court: I will allow the case to go to the jury on three questions, namely: Was the defendant induced to make the note by misrepresentations and in violation of one of the provisions set forth in section 94 of the state statute? second, did the plaintiff have notice or knowledge of the defect in the title of the note or was knowledge imputed to him by the facts and circumstances? and, third, was the plaintiff a bona fide holder for value?

"Mr. Kahn: I take an exception to your honor submitting the questions to the jury on each and every one of the three grounds. I again ask the court to confine it to one question that your honor said you would submit to the jury in the beginning; that is, whether the plaintiff paid value for the note.

"The Court: No; I think I will submit the three questions to the jury that I have stated.

"Mr. Kahn: I take an exception to the ruling of the court. You claimed the affirmative at the beginning of the case."

The undisputed testimony shows that the plaintiff acquired the note sued upon before its maturity, and without notice of any infirmity in the note, or of any defect in the title of the one who negotiated it. The plaintiff testified that in 1919 he bought through A. W. Wallace & Co. some $200,000 worth of stocks, putting up some $55,000 as a margin on the purchase. Early in 1920 he left his home in Detroit, Mich., for a sojourn in the South, and instructed Mr. Wallace to dispose of various stocks at figures agreed upon in the event that the market dropped. He discovered on his return to Detroit that his instructions had not been followed, and

he charged Wallace with having mishandled his account, and made a claim against the firm for $55,000. Negotiations for a settlement continued for some months, and in August, 1920, the plaintiff instructed Wallace & Co. to turn his account over to another firm of brokers. Wallace urged him not to transfer his account, as it would occasion the firm great embarrassment. As a result of the discussion which ensued, Wallace made an offer of settlement, which was that Wallace & Co. would transfer to the plaintiff the note made by the defendant, which the company then held for $20,000, and that they would also transfer to him $25,000 worth of stock in the American Silver Corporation. The proposal also involved certain other matters, which need not be considered at this time. At the time this proposal was made Wallace told the plaintiff that his firm held defendant's note for $20,000, that defendant had bought 20,000 shares of American Silver Corporation stock, had paid $5,000 on account, and given the note in settlement of the balance. He also stated that defendant was rated for $75,000 first credit in Bradstreet's.

The plaintiff took the matter under advisement, looked up defendant's rating in Bradstreet's, had the proposal put into letter form, and the next day accepted it. At the time he took the note he had no knowledge that it was a renewal note. He had no knowledge whatever of any of the facts which are relied upon by the defendant to defeat recovery upon the note. The following is an excerpt from his testimony:

"Q. Did you know anything about the conditions or transactions that took place between A. W. Wallace & Co. or Mr. Colliten, or Mr. McLaughlin with Mr. Dailey at time you bought this note? A. I never heard of Mr. Dailey until the 17th, when Mr. Wallace proposed the note to me when he came to my office. That was the first time I ever heard of Mr. Dailey.

"Q. Did you hear anything of the facts, such as you have heard here? A. No; not at all. I know nothing about the matters that have been related here."

The plaintiff, on receiving the note, at once deposited it in the National Bank of Commerce of Detroit, with instructions to forward it for collection. A short time before it became due Wallace & Co. asked plaintiff to consent to its renewal for 30 days, and he was informed that the defendant then had a $75,000 deal on which had not materialized, and he was assured that, if he consented to the renewal, it would be paid. He consented to accept a renewal

note, and it is upon this renewal that this action was brought.

[1] There is not any testimony in the case from which a jury could infer that at the time the plaintiff purchased the note he had any notice of any infirmity in the note, or of any defect in the title of the person negotiating it. It is shown by uncontradicted evidence that he took the note in good faith, for value, and before maturity. In Goodman v. Simonds, 20 How. 343, 366 (15 L. Ed. 934), the Supreme Court stated the law as follows:

"But it is a very different matter when it is proposed to impeach the title of a holder for value, by proof of any facts and circumstances outside of the instrument itself. He is then to be affected, if at all, by what has occurred between other parties, and he may well claim an exemption from any consequences flowing from their acts, unless it be first shown that he had knowledge of such facts and circumstances at the time the transfer was made. Nothing less than proof of knowledge of such facts and circumstances can meet the exigencies of such a defense; else the proposition as stated is not true, that a party who acquires commercial paper in the usual course of business, for value, and without notice of any defect in the title may hold it free of all equities between the antecedent parties to the instrument."

That court has in subsequent cases re-asserted the same doctrine. In Murray v. Lardner, 2 Wall. 110, 17 L. Ed. 857, the Supreme Court, discussing the rights of a transferee of negotiable paper, said:

"The party who takes it before due for a valuable consideration, without knowledge of any defect of title and in good faith, holds it by a title valid against all the world. Suspicion of defect of title, or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker, at the time of the transfer, will not defeat his title. That result can be produced only by bad faith on his part."

In Hotchkiss v. National Bank, 21 Wall. 354, 359, 22 L. Ed. 645, the above doctrine was reasserted, with the statement that "the burden of proof lies on the assailant of the title." He must show the bad faith which implies guilty or willful ignorance.

In Shaw v. Railroad Co., 101 U. S. 557, 563 (25 L. Ed. 892), the controversy involved, among other matters, rights in an indorsed bill of lading declared by statute to be negotiable. In discussing the subject the court referred to the law of negotiable bills

and notes and the right of a bona fide holder for value therein. It again said:

"The rule was first applied to the case of a lost banknote (Miller v. Race, 1 Burr. 452), and put upon the ground that the interests of trade, the usual course of business, and the fact that bank notes pass from hand to hand as coin, require it. It was subsequently held applicable to merchants' drafts, and in Peacock v. Rhodes, 2 Doug. 633, to bills and notes, as coming within the same reason."

In Swift v. Smith, 102 U. S. 442, 444, 26 L. Ed. 193, the question was again before the court, and the doctrine of the preceding cases was reasserted. See, also, Hotchkiss v. National Shoe & Leather Bank, 21 Wall. 354, 22 L. Ed. 645; Murray v. Lardner, 69 U. S. 110, 17 L. Ed. 859; Commissioners of Marion County v. Clark, 94 U. S. 278, 24 L. Ed. 59; King v. Doane, 139 U. S. 166, 11 S. Ct. 465, 35 L. Ed. 84.

And this court has recently had occasion to apply the doctrine as above set forth. Murray v. Wagner (C. C. A.) 277 F. 32, 36; Crittenden v. Widrevitz (C. C. A.) 272 F. 871, 873. There are numerous cases in other circuits asserting the same doctrine. First National Bank v. Moore, 148 F. 953, 958, 78 C. C. A. 581; Amalgamated Sugar Co. v. United States National Bank, 187 F. 746, 109 C. C. A. 494; Young v. Lowry, 192 F. 825, 113 C. C. A. 149; Washington, etc., Ry. v. Murray, 211 F. 440, 128 C. C. A. 112; Santa Marina Co. v. Canadian Bank of Commerce, 254 F. 391, 165 C. C. A. 611; Fidelity Trust Co. v. Mayhugh (C. C. A.) 268 F. 712; Union National Bank v. Neill, 149 F. 711, 79 C. C. A. 417, 10 L. R. A. (N. S.) 426.

The doctrine of the New York courts on this subject is not different from that announced by the Supreme Court of the United States. In Ward v. City Trust Co., 117 App. Div. 130, 102 N. Y. S. 50, the court laid down the law as follows:

"But the question as to a transferee of commercial paper is not the actual title the transferor had to convey, but what was his apparent right to make the transfer, and, if he had such an apparent right to make a transfer, it is no defect in the title of the transferee, a holder for value and in good faith, that the transferor is abusing a trust or committing a fraud, unless the transferee also has notice of such abuse of trust or intended fraud. The notice of a defect or want of power in the transferor, * * * to make a valid transfer, must be knowledge of such facts on the part of the transferee

that his action in taking the instrument amounted to bad faith."

The above case was reversed by the Court of Appeals (192 N. Y. 61, 84 N. E. 585), but the grounds of reversal in no way affect the quotation above set forth. In that case the president of a corporation took a check for $125,000 payable to the order of his corporation, and indorsed it as president and general manager, and delivered it to the trust company in payment of a personal loan obtained by himself. This resulted in the failure of the company. The Court of Appeals was of the opinion that the face of the check and its use to pay a personal debt was sufficient notice that the transaction was unlawful. The court said:

"The presumption was against the transaction, and, as we have seen, unless that presumption was overcome by reasonable inquiry, the transaction, unlawful in fact and unlawful on its face, is presumed to have been known to the trust company to be unlawful. The duty of inquiry extended to all the facts and defects suggested by the form of the check, and hence went beyond the question of authority and included the rights of creditors."

In Cheever v. Pittsburgh, etc., R. R. Co., 150 N. Y. 59, 44 N. E. 701, 34 L. R. A. 69, 55 Am. St. Rep. 646, the Court of Appeals defined good faith in the holder of negotiable paper as follows:

"He is not bound at his peril to be on the alert for circumstances which might possibly excite the suspicion of wary vigilance; he does not owe to the party who puts the paper afloat the duty of active inquiry in order to avert the imputation of bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence. The holder's rights cannot be defeated without proof of actual notice of the defect in title or bad faith on his part evidenced by circumstances. Though he may have been negligent in taking the paper, and omitted precautions which a prudent man would have taken, nevertheless, unless he acted mala fide, his title, according to settled doctrine, will prevail."

In Cole v. Harrison, 167 App. Div. 336, 341, 153 N. Y. S. 200, 203, it is said that "something more than mere suspicion is required to prove bad faith on the part of the holder of a note." And in Oliner v. Goldenberg, 168 App. Div. 874, 876, 154 N. Y. S. 612, 614, the court said:

"It is settled in this state that something more than suspicion is required to prove bad faith on the part of a purchaser of a check or promissory note."

Section 721, Rev. St. U. S. (U. S. Comp. St. § 1538), provides as follows:

"The laws of the several states, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, and the courts of the United States, in cases where they apply."

The New York Negotiable Instruments Law (Consol. Laws, c. 38) enacts:

"A holder in due course holds the instrument free from any defect of title of prior parties and free from defense available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon." Section 96.

"A holder in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." Section 91.

In Second National Bank v. Weston, 172 N. Y. 250, 64 N. E. 949, the New York Court of Appeals, in an opinion by Judge Cullen, sustained the right of the trial judge to direct a verdict on the testimony of a party to the action. The court followed Hull v. Littauer, 162 N. Y. 569, 572, 57 N. E. 102, and quoted approvingly an extract from the opinion in that case, which was as follows:

"Generally, the credibility of a witness, who is a party to the action, and therefore interested in its result, is for the jury; but this rule, being founded in reason, is not an absolute and inflexible one. * * * Where, however, the evidence of a party to the action is not contradicted by direct evidence, nor by any legitimate inferences from the evidence, and it is not opposed to the probabilities, nor, in its nature, surprising or suspicious, there is no reason for denying to it conclusiveness."

And see Lomer v. Meeker, 25 N. Y. 361; Kelly v. Burroughs, 102 N. Y. 93, 6 N. E. 109; Siegmeister v. Lispenard Realty Co. (Sup.) 107 N. Y. S. 158.

We fail to discover in the facts and cir-

cumstances of this case any reason for sending it to the jury. The evidence of the plaintiff, showing that he took the note for value, before maturity, and without notice of facts from which bad faith could be inferred, is uncontradicted. Under such circumstances the plaintiff was entitled to the direction of a verdict in his favor.

[2] The plaintiff has assigned for error the admission over his objection of testimony given by certain witnesses, which he asserts was wholly incompetent and had no bearing on the issue involved. We do not think it necessary to review this testimony in detail. The issue was a narrow one. It was whether the plaintiff was a bona fide holder for value before maturity and without notice. The admission of testimony which had no bearing on that issue should not have been permitted.

Judgment reversed, and new trial granted.